No. 81.—GIDEON HOTCHKISS, plaintiff in error, *vs.* GEORGE M. NEWTON, executor, defendant in error.

[1.] In a suit brought upon an instrument in these words: "For value received, I promise to pay Gideon Hotchkiss, five hundred dollars in castings, at Hopkins & Hardeman's foundry in Augusta—said Hotchkiss' present account to go in part payment. The castings to be taken at 6 cts. per lb. :" *Held*, that no *time* being fixed by the contract for the delivery of the property, that there must be a demand and refusal proven.

[2.] It is no error to refuse to charge the Jury as to a matter of pleading, that being an issue of law determinable only by the Court.

[3.] General remarks respecting pleadings.

[4.] Definition of evidence.

[5.] Questions as to the relevancy and admissibility of the testimony, are properly for the Court.  Its sufficiency and effect belong *exclusively* to the Jury.

Debt and *certiorari*, in Richmond Superior Court.  Decision by Judge STARNES, at Chambers, July 18, 1851.

Gideon Hotchkiss brought suit in the Court of Common Pleas of Augusta, against George M. Newton, as the executor of Thomas Hopkins, deceased, upon the following instrument:

" For value received, I promise to pay G. Hotchkiss, five

hundred dollars in castings, to be delivered at Hopkins & Hardeman's foundry in Augusta—G. Hotchkiss' present account to go towards the payment of said five hundred dollars.

(Signed,)                    THOMAS HOPKINS.

The castings to be furnished at 6 cts. per lb.

Indorsed—

$256 99, received on the within, the sum of two hundred and fifty-six dollars ninety-nine cts. May 15, 1845.

(Signed,)                    GIDEON HOTCHKISS."

It was admitted on the trial, that the credit was in the handwriting of Hopkins, and the signature by Hotchkiss. Plaintiff also introduced the book of defendant's testator, showing a balance struck in the account of plaintiff, on June 3d, 1845, and an indebtedness found of $256 99 cts.

The presiding Judge charged the Jury, that the plaintiff could not recover on this instrument, without proof of a special demand previous to the bringing of the suit. To which charge, plaintiff's counsel excepted.

The presiding Judge also charged the Jury, that the credit indorsed on the instrument sued on, and the corresponding entry on the books of defendant's testator, were no evidence of a demand for the balance due on the instrument. To which charge plaintiff's counsel excepted.

Plaintiff's counsel requested the Court to charge, that the form of pleading prescribed by the Act of 1847, entitled " an Act to simplify and curtail pleadings at Law," covers this case ; and that under this Act it is only necessary to aver indebtedness, and that the proof should correspond.

The Court refused so to charge, and plaintiff's counsel excepted.

Upon these exceptions a writ of *certiorari* was sued out to the Superior Court. Upon the hearing of which, counsel for plaintiff insisted for a rehearing, on the additional ground that the Judge in his second charge above stated, expressed his opinion on the facts. Judge *Starnes* declined to consider this ground because

it was not included in the petition for *certiorari.* This decision is assigned as error.

Judge *Starnes* refused to sustain the *certiorari* on all the grounds taken, and error has been assigned severally thereon.

John K. Jackson, for plaintiff in error.

Jas. G. Gould, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] This suit was brought in the Court of Common Pleas of Augusta, by Gideon Hotchkiss, against George M. Newton, as executor of Thomas Hopkins, deceased, on a written instrument without date, of which the following is a copy :

" For value received, I promise to pay to Gideon Hotchkiss, five hundred dollars in castings, at Hopkins & Hardeman's foundry in Augusta—said Hotchkiss' present account to go in part payment.        (Signed,)        THOMAS HOPKINS.
The castings to be taken at 6 cts. per lb."

On this instrument was indorsed a credit of $256 99 cts. the body of which credit was admitted by the defendant to be the handwriting of his testator. It was proven on the part of the plaintiff, at the trial, that the balance on Hopkins & Hardeman's books against plaintiff, was $256 99 cts. some time between April 24th, and June 3d, 1845 ; the credit on the instrument bearing date in May, 1845.

The case being submitted to the Jury upon the written contract and credit thereon, with the proofs as hereinbefore stated, the defendant offering no evidence, the plaintiff requested the Court to charge the Jury, among other things, 1st. That a special demand previous to bringing the action, was not necessary. 2d. That proof of an accounting between the parties and a *bona fide* payment, was evidence of a demand.

The Court refused to give the charge as requested ; but on

Hotchkiss vs. Newton.

the contrary instructed the Jury, that a special demand was necessary, and that the testimony offered was no proof of a demand for the balance due on the instrument.

The plaintiff farther asked the Court to charge, that the form of pleading prescribed by the Act of 1847, applied to the case at bar; and that under that Act, it was only necessary to allege indebtedness and prove it. The Court refused to charge either affirmatively or negatively. The verdict of the Jury was a general finding for the defendant.

Upon these several charges and refusals to charge, the plaintiff applied to the Circuit Judge for, and obtained a *certiorari*; upon the hearing of which, the Judge of the Court of Common Pleas was sustained; and to reverse this decision of Judge *Starnes*, this writ of error is prosecuted.

The opinion of the Judge of the Superior Court, which accompanies this record, is a most elaborate one—discussing at large, both the law and the facts, upon general principles, and upon the authorities, as well as in reference to the particular questions which are involved. And the argument before this Court has been conducted in a manner to satisfy us, that with our learned young brothers, the law is a labor of love, a congenial employment, and that they find themselves perfectly at home in its tangled mazes.

Was a special demand necessary to be proven previous to bringing the action on this instrument?

The answer to this question will depend upon the construction which we give to this contract. Was the liability of the debtor to pay directly and generally in money? or to deliver specific articles to a certain amount, to wit: five hundred dollars worth, and at a stipulated price, when called for?

In our judgment, the understanding was, to supply castings, at such times and of such description as suited the creditor, and that failing to deliver these articles when demanded, within a reasonable time after the agreement, that then, and not before, the promisor became responsible for the money. In other words, that the liability was not direct and primary, but collateral and secondary. And this, we have no doubt, is the sense in

which the parties mutually understood this contract at the time it was made ; and justice requires that their meaning should be effectuated.

The *place* of performance is expressed, but the *time* left open. This gives the payee the election as to time. And the well settled rule is, that a special request must be shown at the place designated. It is different where the contract of delivery is specific as to time ; there the promiser must move first.

If this interpretation of the instrument be not correct, why was the time for delivery omitted ? . If it was intended that the time for delivery should be *instanter*, or within as short a time after as it could be done, why did the · contract not contain a definite stipulation to that effect ? The conviction is irresistible that it was left open designedly. Nor is it imposing any unreasonable burden on the promisee, to require him to notify the promiser at what time it will suit his convenience or business, to receive the whole, or any portion of the castings which were to be furnished. This is not only a common sense exposition of this transaction, but it is in conformity with the usage of business men who enter into engagements of this character.

The law is thus summed up by *Mr. Chipman* in his *Essay on Contracts*, 28, 29 : " If," says he, " a merchant give a due-bill to A, payable in goods, and no time or place of payment be designated, the due-bill contains an acknowledgement that A has paid him in advance for the amount of goods therein expressed; and a promise is implied on the part of the merchant, that whenever A shall call at his store and present the due-bill, he will deliver to him such articles as he shall select, out of the goods on hand. The store of the merchant is the place of payment, and no action can be maintained on the due-bill, until A shall call at the store of the merchant for the goods, and the merchant shall refuse to deliver such goods as A shall select."

And in the well-known and much litigated case of *Wilneshurst vs. Brooker*, (7. *M. & Gr.* 882,) it was held by the English Court of Common Pleas, that " when goods are sold and nothing is said about the time of delivery, the seller is bound to deliver them *whenever* they are *demanded.*" And this principle was

expressly sanctioned by the Exchequer Chamber. It is true, the judgment below was reversed, but it was upon the ground that the facts which appeared on the record, did not justify the inference which was drawn from them by the Court. But *Lord Abinger* affirmed distinctly the legal principle which is involved in this discussion.

And in *King vs. Wilson*, (6 *Beavans' R*. 124,) the Court say, "that although *time* was not originally made by the parties of the essence of the contract, yet it may become so by *notice*, if the other party is afterwards guilty of improper delays in completing it."

Our conclusion then is, that where the contract is not to pay money in goods, or in the alternative, money or goods, but to deliver specific articles to a stipulated amount, and at a price agreed on, and no time is fixed by the contract for the delivery of the property, there must be a demand made or notice given, and a failure to comply on the part of the payor, before he can be held answerable in money. And notwithstanding the apparent conflict of authority in the different States upon this point, I am satisfied that a careful examination of the adjudicated cases will show, that not a single reported case can be found to contradict this doctrine. It is true that *dicta* may be adduced to the contrary, as in the case of *Roberts vs. Beatly*, 2 *Penn. R*. 63. But in these, although the agreement was to deliver property at a specified *time* and *place*, *Mr. Huston*, Justice, was not certain but that a previous demand was necessary.

But it is insisted that the credit indorsed upon this instrument, is evidence of demand, after which the balance is due immediately in money. It is conceded that part payment, a promise to pay, or an acknowledgement of liability by *an indorser*, is, *prima facie* evidence not only of notice, but of presentment also. But what are the facts here? Hotchkiss' existing indebtedness by book account to Hopkins, was to be received in part payment of the contract. The amount was $256 99 cts. the precise sum credited upon the instrument. How, I ask, does this create any presumption that the balance of $263 01 was demanded in castings?

So far as this question is concerned, the agreement might have been worded thus: " For value received, I promise to pay Gideon Hotchkiss, $243 01 in castings, at Hopkins & Hardeman's foundry in Augusta, the residue of the five hundred dollars advanced to me by the said Gideon Hotchkiss, after deducting his book account of $256 99 cts." Such is the substance and legal tenor of this instrument. The credit, under these circumstances, proves nothing, either one way or the other. It left the contract just where it found it, touching the matter in dispute between these parties. It showed, it is true, that that portion of the · agreement respecting the mutual indebtedness had been arranged, but it proved nothing as to the rest of it.

[2.] Another question raised in the record is, that the Court committed error in refusing to charge the Jury when requested, that the form of pleading prescribed by the Act of 1847, applied to this case, and that under it, it was only necessary to allege indebtedness and prove it.

We apprehend the presiding Judge was right in refusing to submit a point of pleading to the Jury. It was an issue of law, determinable only by the Court. We have held, that under the Act of 1847, " to simplify and curtail pleadings at law," the declaration will be sufficient, if it pursues the form prescribed by the Statute, and that no additional averments are necessary to let in the proof necessary to a recovery. *Cameron vs. Moore, decided at Decatur*, 1851. Consequently, as strange and anomalous as it may seem, the plaintiff in this case, under the allegation that the defendant's testator was indebted to him so much on a written promise, accompanied by a copy of the instrument, would be entitled to prove a special demand, notwithstanding he had omitted to aver it. True, this is a wide departure from the well established and time honored practice of the Common Law, still it is the indisputable right of the Legislature to regulate and control the matter. In our zeal to dispense with *shadows* in legal proceedings, we should be careful to retain the *substance ;* otherwise, the most injurious consequences may result to the rights of parties.

[3.] Accustomed as I am, to look upon the Judiciary Act of

1799, *as I understand it,* as the *ne plus ultra* of perfectability in pleading—a noble monument of the wisdom and learning of its authors—I view with jealousy, any attempt to improve it. One thing is certain, that any effort heretofore made for this purpose, has been calculated to produce embarrassment and confusion. That system founded upon rules of great simplicity and comprehensiveness, required the parties to set forth their cause of action and defence, plainly, fully, and distinctly ; and any enactment which dispenses with this, experience will demonstrate to be impolitic in its tendency.

[4.] The only remaining question is, was it error in the Court of Common Pleas, to charge the Jury, that the credit on the contract was no proof of a demand ? Was it admissible at all to establish that fact ?

What is evidence ? It is the means by which any fact which is put in issue, is established or disproved. The matter submitted for investigation here was, whether a demand had been made by the promissee upon the promissor for a compliance with this contract. Did the proof offered, go to ascertain this fact? We have already said, that it did not. It was, therefore, irrelevant and properly withdrawn from the consideration of the Jury.

[5.] It was a question respecting the competency and admissibility of the testimony, and not as to its sufficiency or effect; the former falling properly within the province of the Court—the latter belonging exclusively, under our Statute, to the Jury.

Upon the whole, we are satisfied that the judgment of the Circuit Court, affirming that of the Court of Common Pleas for the City of Augusta, is legal, upon the grounds which have been argued against it, and should be affirmed.