HARDY *et al. v.* HARDY, administratrix.

1. Where one was guardian for his children and had funds in his hands belonging to them, if he used such funds to purchase lands, though he took a deed conveying the land to himself, equity would impress the property with a trust character in favor of the children, in a suit brought by them for the purpose of having a trust declared.

(*a*) But if the guardian bought the land with funds which he had procured by effecting a loan from a third person, or in any other way independently of the trust funds, and with the money thus borrowed purchased the land, though he might subsequently have used the funds which he held as guardian for his children to repay the loan, this would not fasten a trust upon the property, unless the borrowing of the money was done with the intent to subsequently repay it with the trust funds in his hands, so as to give effect to a scheme whereby the title to the property might be vested in the guardian individually free from the trust character which would have been impressed upon it had he directly in the first instance purchased the land and paid for it with trust funds.

2. The fact that the intestate had used the funds belonging to his children to make improvements upon the land would not have the effect of creating an implied trust upon the property thus improved.

3. To avail the plaintiff in error in this court, exceptions to the admission of evidence should show the ground of the objection and that this ground was urged when the evidence was offered.

4. The court erred in excluding from evidence the application to the court of ordinary, made by B. I. Hardy as guardian of his children, to be allowed to invest the funds which he had in his hands as guardian in lands, together with the order passed by the ordinary upon this application, allowing the same.

No. 1168. SEPTEMBER 5, 1919.

Claim. Before Judge Walker. Wilkes superior court. September 17, 1918.

Mrs. Carrie Hardy, as administratrix of the estate of her deceased husband, Ben. I. Hardy, who died intestate, advertised for sale certain land alleged to belong to the estate of the in-

testate. This land consisted of a single tract of one hundred acres. The plaintiffs in error, D. E. Hardy and four other children of the intestate, filed a claim to fifty ·acres of the tract, specifically described in the claim affidavit. At the trial term of the court at which the case was heard the claimants filed what they termed "a full statement of their claim," and in this additional statement they alleged the death of their mother; that she at the time of her death left an estate of which the claimants were heirs, the amount of the same being $1,000; that B. I. Hardy was appointed guardian of this property, and received the sum of money stated for the benefit of claimants; that in February, 1909, B. I. Hardy bought from his brother, Alex. Hardy, fifty acres of land adjoining fifty acres of his own; that B. I. and Alex. had inherited the said 100 acres from their father, W. D. Hardy; that there were other heirs of W. D. Hardy besides B. I. and Alex.; that the land belonging to the estate of W. D. Hardy was so divided as to give each heir fifty acres; and B. I. Hardy having bought the share of Alexander Hardy, the other heirs joined in a quitclaim deed to B. I. Hardy for 100 acres, this being the tract of land advertised by the administratrix for sale. "Claimants allege that B. I. Hardy took from the fund held by him as guardian of claimants $250 to pay for the fifty acres of land bought from Alex. Hardy. He not only paid their money for this to the full extent of its value, but informed them that it was their property and that he held it for them. . . That said B. I. Hardy took the balance of their estate and expended all of it in improving the other fifty acres, and told them at the time that the whole 100 acres was theirs, and that he was holding it for their benefit. Claimants allege that they are entitled to the whole 100 acres, or that in any event they are entitled to the fifty acres described in claimants' petition." On the trial of the issue made the jury found in favor of the administratrix, that the lands belonged to the estate of B. I. Hardy. The claimants made a motion for a new trial, which having been overruled, they excepted.

*Colley & Colley,* for plaintiffs in error. *R. C. Norman,* contra.

BECK, P. J. 1. There are several portions of the charge excepted to in various grounds of the motion for a new trial, but they are without merit. In substance, the portions of the charge complained of instructed the jury that if the money belonging

to the claimants in the case was invested in the land which they claimed, the jury should find for the claimants; but unless it did appear from the evidence that the money which B. I. Hardy held as guardian for his children was invested in this land, their finding should be in favor of the estate of B. I. Hardy. While some of the language employed in the instructions is inapt and involved, the jury could not have been misled as to the real issue. There was no question that B. I. Hardy took a deed to 100 acres of land which formerly belonged to the estate of his father, and that this comprised the share in the estate of Alex. Hardy; but which fifty acres does not expressly appear. There is evidence to show that B. I. Hardy borrowed from one Barnett the money with which to pay Alex. Hardy for his interest; and there is other evidence tending to show that the payments to Alex. Hardy were made from funds derived from sources not shown, and that he used the funds which came into his hands as guardian to repay the loan which he had effected in order to raise the money to pay for the land. There was evidence introduced by the claimants tending to show that B. I. Hardy paid for the land with the funds of his children which he held in his hands as guardian. Such evidence as this raised the single distinct issue. For, if B. I. Hardy borrowed money from Barnett, or procured money in other ways, not from the funds which he held as guardian, and bought and paid for the land belonging to his brother Alex., and took the deed to himself, he would not hold the land thus acquired as trustee for his children, though he subsequently used the money which he held as guardian to repay the loan which he had effected in order to buy the property, unless the borrowing of the money was done with the intent to subsequently repay it with the trust funds in his hands, so as to give effect to a scheme whereby title to the property might be vested in the guardian individually free from the trust character which would have been impressed upon it had he directly in the first instance purchased the land and paid for it with trust funds. But it is not contended in this case that there was such a fraudulent scheme in the mind of B. I. Hardy, guardian, at the time of borrowing the money from Barnett and with which there is evidence to show the land was paid for, or that the portions of the charge under criticism had the effect of preventing the jury from passing upon the question as to whether

or not the buying of the land with the borrowed money was a part of such a fraudulent scheme as that indicated.

The fact that the guardian may have said at various times that the land was the property of his children, or that he had bought the land for them, would not of itself impress the land with the character of a trust, unless it was such independently of this saying. If he had not purchased the land under such circumstances as rendered it trust property held for his children, his repeated declarations made while in possession that the land belonged to his children, or that he intended it for them, or that he held it in trust for them, would not be sufficient to transfer the title from himself and vest it in the children. Titles to land must be evidenced by writing, and such declarations could not create for his children an express trust in the land. All express trusts must be created or declared in writing. Civil Code, § 3733; *Smith* v. *Williams,* 89 *Ga.* 9 (15 S. E. 30, 32 Am. St. R. 67).

2. Headnote 2 requires no elaboration.

3. In one ground of the motion for a new trial exception is taken to the court's ruling which allowed, over the objection of claimants' counsel, the introduction in evidence of two deeds executed by the intestate; but it does not appear what, if any, objection was urged to the introduction of these deeds. It is merely stated in the ground of the motion that the documents were admitted over objection of claimants' counsel; and it is also alleged in the ground of the motion that such a ruling was error and claimants would not be bound by these instruments; but it is not stated that this objection was made to the court at the time of the introduction of the evidence. This being true, the exception to the introduction of this evidence cannot avail the movants here, as exceptions to the admission or rejection of evidence must show the ground of the objection and that it was urged at the time of the admission or rejection of the evidence.

4. Another ground of the motion for a new trial complains of the refusal of the court to allow the introduction in evidence of an application to the court of ordinary, made by B. I. Hardy as guardian of his children, to be allowed to invest the funds which he had in his hands as guardian in lands and to employ labor thereon, and also the order passed by the ordinary upon this application, allowing the investment to be made as prayed. It is

not contended by the movant that the ordinary had the authority to pass this order, but it is contended that the evidence was "admissible as an admission by B. I. Hardy." The majority of the court are of the opinion that the claimants should have been allowed to introduce this evidence as an admission tending to show that the land was actually bought and paid for with the money of the wards which was in the hands of Hardy as guardian. The writer of this opinion does not concur in this ruling, being of the opinion that this was not such an admission as to render it competent evidence against the administratrix and in favor of the claimants.

There is no merit in the other exceptions contained in the motion, not specifically referred to above.

*Judgment reversed. All the Justices concur except Beck, P. J., who dissents from the ruling made in the fourth division of the opinion and the corresponding headnote.*