### 47982. STEVERSON et al. v. HOSPITAL AUTHORITY OF WARE COUNTY et al.

CLARK, Judge. Plaintiffs, a widower and his two minor sons, sued a hospital and doctor for the homicide of Mary Frances Steverson, the wife and mother of plaintiffs. After the jury returned a verdict for defendants, plaintiffs sought a new trial which was denied from which denial this appeal ensued.

Mrs. Steverson was a patient of defendant doctor. Two days after an office visit she was admitted to defendant hospital in a condition of advanced pregnancy where her condition was such that she was promptly taken to the delivery room before her doctor could be contacted and delivery took place with the assistance of an extern, this being the name applied to student doctors who serve a portion of their last year in hospitals. About two hours after giving birth the patient began bleeding profusely, this being described as an abnormal development. Various treatments and medications were administered but about 11:30 p.m. she went into shock from loss of blood. Defendant doctor ordered two units of blood cross-matched which was supplied by defendant hospital. Plaintiffs assert various acts of negligence but principally that the administered blood was erroneously mismatched with the result that her death occurred. Defendants denied any negligence.

1. Appellants earnestly argue the general grounds, the enumeration of error contending that the evidence concerning the mismatching of blood "stood before the jury unrebutted and unchallenged." We have reviewed the three volumes constituting the transcript of the trial, including the numerous exhibits introduced by both parties. We find that there is a conflict in evidence which was properly submitted to the jury for determination. Although there were in the physician's office file two reports from the Georgia Department of Public Health (T.

370, 371) indicating the blood type of deceased to have been O Positive there is also evidence indicating that deceased did not have type O Positive blood but actually had type AB Positive blood.

Twelve documents from the hospital's blood bank records (T. 355-A, 356, 357) state the patient's type to be AB Positive. Although the Georgia Department of Public Health records came from the office files of defendant doctor they contained a printed caveat: "Results insufficient for adequate pre-transfusion testing." The jury apparently accepted the hospital's work in matching blood to be more reliable and superior to that done by the state laboratory. "In passing on the general grounds of a motion for new trial, this court passes not on the weight but on the sufficiency of the evidence. It is our duty to determine whether the verdict as rendered can be sustained under any reasonable view taken of the proofs submitted to the jury. . . It was the province of the jury, and theirs alone, to put their appraisal upon the proofs submitted to them." *Ingram v. State,* 204 Ga. 164, 184 (48 SE2d 891). "Where the trial judge approves the verdict, the sole question for determination by this court is whether there is any evidence sufficient to authorize it." *Adler v. Adler,* 207 Ga. 394, 405 (61 SE2d 824).

Similarly the evidence was conflicting on such issues of fact as to the cause of patient's excessive bleeding and her death, whether there was undue delay on the part of the doctor and hospital personnel, and if timely and proper medications and transfusions were given. The jury's verdict represented their decision on such conflicts favorably to defendants including in effect their acceptance of the defense contention that there was no blood incompatibility. A review of the transcript discloses sufficient evidence to authorize the verdicts rendered by the jury. Thus the denial of the motion for new trial based on the general grounds was not error. See *Neloms v. Carmichael,* 125 Ga. App. 331 (1) (187 SE2d 555).

2. The second enumeration of error contends the trial court should not have permitted the defendant doctor to testify under objection to the following question posed by counsel for the defendant hospital: "Based on the hospital records and your personal knowledge of this case, what is your opinion as to whether or not the nurses and hospital personnel exercised such reasonable degree of care and skill as is ordinarily employed by hospitals in the area of Waycross in connection with the actual

delivery and the subsequent care of the patient, Mrs. Steverson? . . ." (T. 143, 144, 145).

Quoting verbatim, this assignment of error reads: "As stated at the trial the objection was timely interposed on the ground that the question'. . . calls for a conclusion of fact. . . which would be for the jury. The degree of care exercised is a question particularly and peculiarly and exclusively for the jury. . .' (T. 143), that 'The doctor is permitted. . . to testify as to what the accepted and approved practices and procedures are. He is not permitted to testify that these procedures and practices done by the hospital meet the standard tests. He can tell what they are and what the procedures are. Whether or not they met a standard, that is purely a question for the jury to decide, Your Honor.' (T. 143); and that 'Your Honor, it calls for a conclusion on legal standards. They are legal standards required by law, and the only people who can make that conclusion would be the jury.' (T. 143-144)."

This enumeration of error is thus addressed solely to whether the question and answer invaded the province of the jury. In short, is a doctor as an expert permitted to testify concerning the degree of care and skill exercised by nurses and hospitals?

In *Summerour v. Lee,* 104 Ga. App. 73 (2) (121 SE2d 80); *Wilson v. Kornegay,* 108 Ga. App. 318, 320 (132 SE2d 791), and *Shea v. Phillips,* 213 Ga. 269 (2) (98 SE2d 552), we find the following statement: "It is the general rule in this jurisdiction that laymen, even jurors and courts, are not permitted to say what is proper medical and surgical treatment, for that is a medical question."

In *Pilgrim v. Landham,* 63 Ga. App. 451, 454 (11 SE2d 420) this court said: "What is the proper method of diagnosing a case is a medical question to be testified to by physicians as expert witnesses. Laymen, even jurors and courts, are not permitted to say what is the proper method of diagnosing a case for discovering the nature of an ailment . . . And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by the negligence. However, the court and the jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill. They are not permitted to set up and use any arbitrary or artificial standard of measurement that a jury may wish to apply. The proper standard of measurement is to be established by testimony of physicians for it is a medical question."

In *Wilson v. Kornegay,* 108 Ga. App. 318, supra, p. 321, first paragraph, it is at least implied that a physician would be permitted to actually testify that, "the defendant was guilty of malpractice."

The case of *Fincher v. Davis,* 27 Ga. App. 494 (4) (108 SE 905) appears to be directly in point and controlling in this case. In the cited case, the physician-witness for the plaintiff was asked, "Was this operation done in a skilful manner?", and answered affirmatively. The same type of objection was made to the question as was made in this case, namely that the question and answer "trenched upon the province of the jury, in seeking and eliciting a conclusion upon the main issue in the case. . ." It was held that such opinion of an expert is always admissible when given in response to a hypothetical question based upon the expert's own observation of the facts. See also *Howell v. Jackson,* 65 Ga. App. 422, 423 (16 SE2d 45), where this court said: "Jurors and courts do not know and are not permitted arbitrarily to say what are the proper methods of treating an ailment. This is a medical question. Hence, the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case."

We might also add that the trial court charged the jury on the effect of expert evidence and told the jury that it might "accept it and act on it or reject it and then act on their own judgment as applied to the evidence in the case." (T. 328).

We can not perceive of any good reason why the rule applicable in malpractice cases against physicians should not apply equally to the present action brought against the hospital in which technical questions were involved and on which the physician has been first qualified as an expert.

We observe specifically that the objection to the question did not include any reference to whether or not local area or national standards should be applied to the hospital. The trial court thus was not called upon to pass on this point. In fact, the transcript at page 145 shows that when counsel proceeded along the lines of limiting the scope to hospitals in the Waycross area there was no objection stated: "A. Oh yes, I can testify that in my opinion the hospital personnel exercised a reasonable degree of care in this case. Yes, Sir. Q. Such as would be exercised by other hospitals in this area? A. Yes, Sir." (T. 145). A ground of objection to testimony which is not specifically urged in the trial court cannot be raised for the first time on appeal. *Hardy v. Hardy,*

149 Ga. 371 (3) (100 SE 101); *McDaniel v. State,* 197 Ga. 757 (2) (30 SE2d 612); *Holmes v. Burkett,* 98 Ga. App. 189 (2c) (105 SE2d 236); *Kingston v. State,* 127 Ga. App. 660 (2) (194 SE2d 675).

(a)  A series of similar questions was submitted to two other doctors testifying for the defendants dealing with the same matters as to which no objection was made. (T. 260, 306-307).

Did this amount to a waiver of the objection? Where a party fails to object to certain inadmissible evidence, but later objects to substantially the same evidence, the objection should be overruled because the failure to object the first time makes this harmless error. *Bell v. Bell,* 210 Ga. 295 (79 SE2d 524). If inadmissible evidence is admitted over objection and thereafter the same or similar evidence is admitted without objection, the failure to object the second time waives the first objection. *Smith v. State,* 210 Ga. 713 (82 SE2d 507). This is the basic hornbook law of practically all jurisdictions. 89 CJS 504-508, Trial, § 661. For many years it had been held that a party waived his previously overruled objection to evidence by cross examining the witness on the same subject matter. See 11 Enc. Ga. L. 262, Evidence, § 11. This unreasonably restrictive rule was re-examined and rejected in *Carlton Co. v. Poss,* 124 Ga. App. 154, 155 (183 SE2d 231) and *Poss v. Carlton Co.,* 228 Ga. 402 (185 SE2d 803). The holdings there were that a party does not waive his previously overruled objection to evidence by cross examination of the same witness to explain or contradict the evidence or destroy its probative value. Practically simultaneous to these rulings a new Act of the General Assembly (Code Ann. § 38-1713) became effective which is compatible with *Poss,* supra. It provides: "If, on direct examination of a witness, objection is made to the admissibility of evidence, neither cross examination of the witness on the same subject matter nor the introduction of evidence on the same subject matter will constitute a waiver of the objection made on direct examination." The non-waiver obviously relates to the affirmative acts of one who has made a previous objection "on direct examination of a witness" and then either cross examines the witness or subsequently introduces evidence on the same subject matter. Neither Code Ann. § 38-1713 (Ga. L. 1971, p. 460) nor the *Poss* case are relevant under the facts here. The general rule of waiver by failure to object still prevails as it does in practically every jurisdiction in this country.

3. Another evidentiary error is alleged to have been the court's

refusal to allow a Jacksonville doctor to testify for plaintiffs as to the proper standard of care and practices and procedures as to be maintained in hospitals generally with obstetrical patients. When this question was propounded upon direct examination the trial court held a chambers conference and then ruled this would not be permissible. (T. 41). Thereafter, counsel did not comply with the requirement to state the expected testimony of the witness which is necessary in order for this court to consider the alleged error. *Mulcay v. Mulcay,* 223 Ga. 309 (2) (154 SE2d 607); *Paulk v. Thomas,* 115 Ga. App. 436 (4) (154 SE2d 872); *Berger v. Plantation Pipeline Co.,* 121 Ga. App. 362 (173 SE2d 741). "A basic rule of appellate procedure is that no appellate court can rule on the exclusion of evidence unless it is aware of what was excluded. If error is based on the refusal to permit a witness to answer a question, the judge and the appellate court must be informed as to what the answer would have been." 11 Enc. Ga. L. 261, § 10. We therefore cannot consider the omitted evidence which is not in the transcript.

Furthermore, a review of the transcript indicates the adverse ruling to have been harmless in this respect as the evidence desired was elicited from a South Georgia doctor testifying for plaintiffs. Probably plaintiffs' skillful counsel recognized such testimony developed from an area surgeon would carry more weight with the local jury and therefore elected to accept the court's rejection of the Jacksonville doctor's testimony.

4. Plaintiff's final enumeration of error states an improper and prejudicial argument to have been made to the jury by opposing counsel. As the record does not contain the alleged statement we are unable to consider this enumeration. *Palmer v. Stevens,* 115 Ga. App. 398 (8) (154 SE2d 803). The transcript discloses a similar incident by counsel for plaintiffs to have occurred. This contretemps was solved by stipulation which the court thereupon cured through an admonishment to the jurors for them to disregard the provocative portion of the presentation. (T. 320). The allegedly improper arguments described in this enumeration sub judice were not preserved in the record and counsel for the litigants do not agree with reference to what transpired.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, P. J. and Quillian, J., concur. Pannell, Deen and Evans, JJ., dissent. Stolz, J., not participating.*

ARGUED MARCH 6, 1973 — DECIDED JUNE 20, 1973 —

*Jones, Kemp & Osteen, Charles M. Jones, Dawson, Galant, Maddox, Boyer & Sulik, Carl D. Dawson,* for appellants.

*Bennet, Gilbert, Gilbert & Whittle, Wallace E. Harrell, Memory & Memory, S.F. Memory, Jr.,* for appellees.

Pannell, Judge, dissenting. I dissent from the ruling and Division 2 of the opinion holding the admission of testimony therein objected to was harmless error, but I do this solely because the evidence not objected to was not on the same subject-matter as is stated by Judge Evans in his dissent.

Deen, Judge, dissenting. I dissent from Division 2 of the opinion on the basis, among others, of Ga. L. 1971, p. 460 (Code Ann. § 38-1713).

Evans, Judge, dissenting. 1. The majority opinion upholds the trial court in permitting Dr. H. K. Heath to testify, over timely objection, in the affirmative to the following question: "Based on the hospital records and your personal knowledge of this case, what is your opinion as to whether or not the nurses and hospital personnel exercised such reasonable degree of care and skill as is ordinarily employed by hospitals *in the area of Waycross* in connection with the actual delivery and subsequent care of the patient, Mrs. Steverson?" (Emphasis supplied.)

The witness answered: "Oh yes, I can testify that in my opinion the hospital exercised a reasonable degree of care in this case. Yes, sir." The plaintiff's objection was good and should have been sustained. The question is quite elementary. It was tantamount to allowing a patrolman or deputy sheriff, as an expert, to testify that in his opinion the driver of a motor vehicle was not negligent. This he cannot do. He is allowed to recite all of the facts, including his opinion as to how fast the driver was traveling, and whether he was on his own right-hand side of the road. *But he cannot go that one step further and testify that the driver was not negligent! Cone v. Davis,* 66 Ga. App. 229 (4) (17 SE2d 849); *City of Milledgeville v. Wood,* 114 Ga. 370 (2) (36 SE 924); *Corley v. Russell,* 92 Ga. App. 417 (2) (88 SE2d 470).

Further, the question and answer was objectionable because it was limited to the standard of reasonable care *in the area of Waycross.* In a well written opinion, Judge Deen, in *Murphy v. Little,* 112 Ga. App. 517 (2) (145 SE2d 760), discusses this question as it relates to the practice of medicine, and succinctly holds that it is *not* as to the skill *employed by the profession in the immediate*

*locality, but is that employed by the profession generally.* See the very thorough discussion and authorities cited on pp. 521, 522, where the term "medical standards" is employed, which term is broad enough to cover hospitals and doctors. Indeed, the standard of care to be exercised in the practice of medicine and the operation of hospitals are so intertwined that there is no reason for suggesting that a different standard should be applied to these fields wherein the object is to treat the sick. The standard is to be measured by that standard of care employed by physicians and hospitals *generally, and not locally.*

The defendant hospital in this case relies largely on only one Georgia authority in support of its position, to wit, *Emory University v. Porter,* 103 Ga. App. 752, 755 (120 SE2d 668). That case is not authority for the hospital's position. It was a case involving a hospital sued for "failure to inspect or otherwise exercise control over equipment and facilities used by. . . independent practising physician[s] in performing services for a patient" (hn.1a), without any allegation that the equipment was defective. The petition was dismissed for failure to set forth a cause of action. No evidence was introduced, and the question of whether the standard of care required was to be measured by the standard used locally, or generally, was in no wise involved. At page 755, in language that was not required by or necessary to the decision, and was, therefore, obiter dictum, the court stated: "A hospital owes to its patients only the duty of exercising ordinary care to furnish equipment and facilities reasonably suited to the uses intended and such as are in general use under the same, or similar, circumstances in *hospitals in the area. See 41 CJS, Hospitals, § 8."* (Emphasis supplied.) We have carefully studied the Corpus Juris Secundum reference, and not a word therein relates to "hospitals in the area." Further, as there was nothing in the case vaguely relating to *hospitals in any particular area,* this language, being obiter dicta is decisive of nothing. See *State Hwy. Dept. v. Cooper,* 104 Ga. App. 130 (121 SE2d 258); *State Hwy. Dept. v. Wilson,* 98 Ga. App. 619 (2) (106 SE2d 544).

Finally, the majority opinion contends that similar evidence was admitted without objection, and makes reference to the transcript at pages 260 and 306-307. I do not agree. At page 260, Dr. Calhoun testified that he didn't see anything that implied any fault with the hospital. But on cross examination, beginning at page 265, this witness reversed himself and swore he did not contend the hospital did everything perfect, that he has not seen anything that "I could

put my finger on"—and then as to whether giving the wrong blood type to the patient could be considered a minor problem, he replied, "no, sir" and then admitted that he was not a blood expert (Tr. 266). As the mismatching of blood was one of the principal issues in this case, it was simply beyond his competence as a witness on the material points about which he was being interrogated. Again, at page 306-307 of transcript, Dr. Davis, in a general way, suggested by his testimony that the hospital employees and nurses were not shown by the record to have violated the accepted standards *in the Waycross area.* But on cross examination, as to the failure of the nurses to communicate the fact of bleeding by the patient to the physician immediately when it became known, and as to whether such failure was consistent with the standards of nurses' duty to patients in Ware County, he at first testified that such failure would be a breach of duty of care they owed their patient, and that this question "would be open for discussion" and then the following occurred: "Q. If it had been your patient and you had discovered that she failed to notify you of this bleeding at 8:30, you would have been upset with that nurse, would you not have? A. *I probably would have let her have what I thought about it."* (Emphasis supplied.) From the foregoing, it is clear that the improper admission of the testimony of Dr. Heath over proper timely objection cannot be excused, as the majority seeks to do because of introduction of other testimony along the same line.

2. The trial court refused to allow Dr. Jonas to testify on behalf of plaintiff to the effect that the standard of care required of hospitals and doctors generally was not observed in this case. His testimony was rejected over objection that Dr. Jonas was unfamiliar with the standard of care observed and required in the area of Waycross, Georgia. This exclusion was error, but plaintiff failed to perfect the record by showing what answer was expected of this witness, and under the authorities cited by the majority opinion, this enumeration cannot be considered.

3. Plaintiff contends that one of counsel for defendants argued to the jury that a doctor who testified for plaintiff was "owned" by plaintiff's counsel, and plaintiff's counsel moved for a reprimand. This argument was highly improper, but it is not an official part of the record (though not denied by defendants). This enumeration of error cannot be considered under the status of the record.

I dissent from the majority opinion and would reverse the trial court in not excluding the testimony of Dr. Heath as set forth in

enumeration of error number 2.

EVANS, Judge. *Addendum to dissent.* On consideration of motion for rehearing, the majority has re-written pages, 5, 6, 6a, 6b, 6c, 6d, 6e, 6f, and 6g (pp. 511-515); it now becomes necessary to reply to new argument and citations found in these additional pages.

The new majority opinion (p. 512), asks this question: "In short, is a doctor as an expert permitted to testify concerning the degree of care and skill exercised by nurses and hospitals?" The question itself is incomplete, because the question propounded and answered—and to which plaintiff made objection—was as to the degree of care and skill exercised by nurses and hospitals *in the area of Waycross;* whereas it should have been directed to the degree of care and skill exercised *generally* by nurses and hospitals, not limited to a particular area. See *Murphy v. Little,* 112 Ga. App. 517 (2) (145 SE2d 760).

The new majority opinion cites many cases, none of which touch the point, including the following: *Summerour v. Lee,* 104 Ga. App. 73 (2) (121 SE2d 80); *Wilson v. Kornegay,* 108 Ga. App. 318, 320 (132 SE2d 791); *Shea v. Phillips,* 213 Ga. 269 (2) (98 SE2d 552); *Pilgrim v. Landham,* 63 Ga. App. 451, 454 (11 SE2d 420); *Fincher v. Davis,* 27 Ga. App. 494 (4) (108 SE 905); *Howell v. Jackson,* 65 Ga. App. 422, 423 (16 SE2d 45).

All of these are malpractice cases involving dentists, physicians or surgeons—none involves hospitals or nurses. None of these cited cases holds that the degree of care employed locally, or in the area where the alleged malpractice occurred, is the controlling standard.

The new majority opinion (p. 513), observes rather lamely: "We can not perceive of any good reason why the rule applicable in malpractice cases against physicians should not apply equally to the present action brought against the hospital in which technical questions were involved and on which the physician has first been qualified as an expert." Our reply to the above is that the defendant did not come forward with any witness who professed to know the standards of care required of nurses and hospitals generally, but limited the answers to the standards of care in the Waycross area. And when plaintiff brought forth its Doctor Jonas to testify as to standards required of hospitals and nurses *generally* in this kind of case, defendant objected to the testimony and the objection was by the court sustained. To repeat, as is held so clearly in *Murphy v. Little,* 112 Ga. App. 517 (2) supra, the question *is not as to the skill employed by the profession in the*

*immediate locality, but that employed by the profession generally.*