## 48657. DUMAS v. THE STATE.

CLARK, Judge.

This is an appeal by a department store owner from a conviction for the violation of the provisions of Code Ann. § 26-2101 prohibiting the distribution of obscene materials. The materials charged as being obscene were necklaces with medallions attached.

This case had its inception as a result of the seizure by school officials at the LaGrange Boys Junior High School of two medallions which in the opinion of the principal, assistant principal, athletic coach and police detective captain were such that they were obscene within the meaning of our statute. Although these exhibits were not transmitted to this court, our consideration of the enumerations of error did not require this court to examine any exhibits as a new trial will be required.

1. On March 6, 1973, when the trial took place in the State Court of Troup County the U. S. Supreme Court had not yet released its decision of Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419), which attempted a clarification[1] of the applicable community standards on obscenity. Thus, court and counsel were in disagreement as to whether the term "prevailing community standards" should be based upon the nationwide community or otherwise. The trial judge ruled the applicable standards to be those of the local community, namely the City of LaGrange. This has since been determined to be erroneous. After the U. S. Supreme

---

[1]Months after this U. S. Supreme Court decision a United Press International survey resulted in a newspaper article headlined "Guidelines on Porno Confusing; Court Rulings Not Understood."

Court in the case of Miller v. California, supra, defined the term community standards by indicating the measuring rod to be that of the State rather than a smaller geographical segment, our Georgia Supreme Court ruled specifically on the question in *Slaton v. Paris Adult Theatre I,* 231 Ga. 312 (201 SE2d 456). Here the court's opinion followed the U. S. Supreme Court and ruled the geographical area to be that of the State of Georgia. We quote from the opinion: "In Miller v. California, 413 U. S. 15 [93 SC 2607, 37 LE2d 419], the Supreme Court clarified the 'community standards' to which the obscenity guidelines were to apply, disavowing that of the nationwide community in favor of that of the state. In view of Miller and of the constitutional responsibility placed upon this court to conduct independent appellate determinations of the issue of obscenity vel non, we hold the 'community' by which the standards for obscenity are gauged is that community or polity which is the State of Georgia." Accordingly, the case must be reversed and a new trial granted.

2.   Enumerations 4, 5, 6 and 7 dealt with alleged evidentiary errors in permitting the school principal, assistant principal, coach and police detective to state their opinions as to whether the State's exhibits predominately appealed to a prurient interest, portrayed a shameful or morbid interest in nudity, sex or excretion, and was utterly without any redeeming social values. Although each of these individuals also added that their opinions were those prevailing in the City of LaGrange it is noted that the school witnesses based their views upon school policies as to what should be available to teenagers. Although our views may be considered obiter dictum we deem it incumbent to state that determination of "community standards" are not based upon what is appropriate for children. We have in Code Ann. §§ 26-9901a through 26-9907a statutes permitting prosecution for distribution of obscene material where children are involved.

In the case at bar there was no foundation to show knowledge of the community standards as a whole and therefore personal opinions of the three school officials were erroneously admitted into evidence. Similarly, a

review of the detective captain's testimony[2] showed his opinions were to be limited to those of a law enforcement officer rather than a knowledge of community standards. These four enumerations of error are meritorious.

3. As a new trial is being granted it should be noted that our Supreme Court in *Slaton v. Paris Adult Theatre I,* supra, has pointed out (p. 317) that "it is also no longer necessary in cases where the materials themselves are available for inspection by the finder of fact that expert testimony be produced on behalf of the prosecution. Paris Adult Theatre I v. Slaton, 413 U. S. 49 [93 SC 2628, 37 LE2d 446]. See, also, United States v. Groner, 479 F2d 577 (5th Cir. 1973)." See also *Fishman v. State,* 128 Ga. App. 505, 509 (197 SE2d 467).

4. There is no merit to the eighth enumeration of error complaining of the court's ruling which sustained the district attorney's objection to the introduction of thirteen magazines and publications containing written and pictorial material depicting nudity and sex in various degrees of explicitness which had been purchased by defense counsel in LaGrange stores. Code § 38-201 provides that "The evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly." "Questions as to the relevancy and admissibility of the testimony, are properly for the court." *Hotchkiss v. Newton,* 10 Ga. 560 (5). "No precise and universal test of the relevancy of testimony is furnished by the law. The question must be determined in each case according to the facts of that particular case and in accordance with the teachings of reason and judicial experience. [Cits.]" *Alexander v. State,* 7 Ga. App. 88, 89 (66 SE 274).

5. The ninth and tenth enumerations of error were to questions submitted in cross examination to witnesses who had limited their direct testimony to the good character of the defendant. (T. 61). On cross examination the district attorney asked "When they [your four

---

[2]He testified that the famed statue of Venus de Milo would be obscene, explaining "The naked body would be obscene as far as I am concerned." (T. 47).

children] were in Junior High School, would you have wanted them to purchase materials such as this in the stores?" (T. 63). The court overruled defense objection that this "was irrelevant and immaterial and did not pertain to this case." Such ruling was error. While considerable latitude exists in cross examination personal questions having no relevancy are not permitted even as a part of a thorough and sifting interrogation. Code § 38-1704 provides "It shall be the right of a witness to be examined only as to relevant matter; and to be protected from improper questions and from harsh or insulting demeanor." See also *Edwards v. State,* 55 Ga. App. 187 (3) (189 SE 678).

In regard to a question of this type being inappropriate, note the comment in United States v. Klaw, 350 F2d 155, 170 (2d Cir. 1965): "Unless there be this protection, a witch hunt might well come to pass which would make the Salem tragedy fade into obscurity ...Otherwise it would be altogether too easy for any prosecutor to stand before a jury, display the exhibits involved, and merely ask in summation: 'Would you want your son or daughter to see or read this stuff?' A conviction in every instance would be virtually assured." See also United States v. Groner, 475 F2d 550, 558 (5th Cir. 1972).

6. The eleventh and twelfth enumerations of error are intertwined. The eleventh enumeration reads: "Because the court, over the objection of the defendant, illegally permitted the solicitor, Mr. Ketzky, to make highly prejudicial and inflammatory statements during his closing argument to the jury concerning whether or not the jurors personally approved of or liked the allegedly obscene material in question and whether the jurors would want their children to see or be exposed to such material or similar materials." The twelfth enumeration reads: "Because the court illegally refused to permit closing arguments of counsel to be recorded despite the fact that the court reporter was available and present during said argument." We are unable to pass on the eleventh enumeration of error because the allegedly improper arguments were not preserved in the record by means of a transcript. *Palmer v. Stevens,* 115 Ga. App. 398

(8) (154 SE2d 803); *Steverson v. Hosp. Auth. of Ware County,* 129 Ga. App. 510 (4) (199 SE2d 881). Such lack was due to the ruling by the trial judge stated in these words: "Let the record show that I didn't permit the oral argument to be reported." (T. 99). Undoubtedly the trial judge had in mind the provisions of subparagraph (b) of Code Ann. § 6-805, which states that "In all misdemeanor cases, the trial judge may in his discretion require the reporting and transcribing of the evidence and proceedings on terms prescribed by him." The meaning of "discretion" herein placed in the trial court is to be obtained from the provisions of subparagraph (j) of that same section. This states that "In all cases, civil or criminal, any party may as a matter of right have the case reported at his own expense." Accordingly, the provision "in his discretion" clearly refers to the terms which the judge may require for the reporting and transcribing but not to the mandatory right to have the proceedings reported. In short, the proper interpretation is that, in all cases, including misdemeanors, any party has the absolute right to have the case reported at his own expense. Therefore, in the instant case, the proper procedure was to have sustained the motion by defense counsel to direct the court reporter already in court to record the oral arguments to the jury on such terms as the judge in his legal discretion might prescribe. Thus the ruling which denied the defense the right to have the oral arguments recorded was error.

*Judgment reversed. Hall, P. J., concurs. Evans, J., concurs specially.*

SUBMITTED OCTOBER 3, 1973 — DECIDED MARCH 1, 1974.

*Wyatt, Wyatt & Solomon, Charles Solomon, Jr., Allen B. Keeble,* for appellant.

*Loeb C. Ketzky, Solicitor,* for appellee.

EVANS, Judge, concurring specially.

1. It is contended in enumeration of error number two (considered by the majority here in division one) that the lower court erred in stating during the trial in the

presence of the jury that the "standards we are trying to determine here is whether or not the standards of LaGrange, Georgia would let obscene material be sold here." (Tr. pp. 14, 15).

The question of what standards are to be applied in determining whether alleged pornographic materials violate the statute is exceedingly difficult. The United States Supreme Court held in the case of Jacobellis v. Ohio, 378 U. S. 184 (3) (84 SC 1676, 12 LE2d 793), that "national standards" are to be applied, and on that authority, this court reversed the State Court of Clarke County in the case of *Feldschneider v. State,* 127 Ga. App. 745 (195 SE2d 184), *because local community standards* had been applied in the trial court's charge.

Since then, the United States Supreme Court, in the case of Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419), has revised its thinking and has decided that "national standards" are *not to be applied,* and instead, has held (p. 33): "We hold the requirement that the jury evaluate the materials with reference to 'contemporary standards of the State of California' serves this protective purpose and is constitutionally adequate." The majority opinion in the present case interprets the above language to mean that each state shall constitute a polity or political unit and that the *standards of each state* shall apply to prosecutions within the confines of that particular state. I am not sure this is what the United States Supreme Court meant in Miller, supra, although I agree that the language is susceptible of that interpretation. If so, what a quagmire of confusion is set up! Little Rhode Island shall use its standards as to pornography; great Texas shall use its standards, and by and large there may be 50 different standards to apply throughout the United States. As book publishers and movies are not expected to publish books and make movies for each individual state, where does that leave them? And what of the situation where one large city lies partly in two states, which states have different standards? In our own State of Georgia, do we have one state-wide standard? Surely, if we apply the standards of Nahunta, Blowing Rock, Unadilla and Hiawassee to more liberal Atlanta, that could have an unusual impact on the

situation in Atlanta. The writer is personally against pornography, and would not shed one tear if all, even borderline, businesses are forced to close, but are my standards to govern? I apprehend such is not the case.

It appears that the "local community standard" would perhaps offer the best solution to this almost insoluble problem, but even that would be far from perfect.

We are made to understand that the U. S. Supreme Court during 1974 will pass upon the case of *Jenkins v. State,* 230 Ga. 726 (199 SE2d 183), from Dougherty County, Georgia, in which case the Georgia Supreme Court has ruled the matter to be pornographic and a violation of law. Perhaps out of this decision will come some clarification, but we do not look forward to that result with great optimism, or enthusiasm.

2. I fully concur in Division 6 of this opinion wherein the majority reverses the trial court for refusing to allow the alleged improper arguments of the solicitor to be preserved in the record by means of the transcript. But I wish to add that it is quite apparent that the solicitor made highly prejudicial and inflammatory statements during his closing argument to the jury, and the trial judge overruled defendant's objections thereto. At page 99 of the transcript the following is shown: "Mr. Solomon. I did not object to Mr. Ketsky's [the solicitor's] argument in its entirety until the end so that it would not break his — I object to any statements Mr. Ketsky made in his argument dealing with idea of — would you want your son or daughter to see or read this stuff, as explicitly stated in Circuit Court Case—USA v. Willis—it's this Circuit case saying they will not put up with this type of argument any longer. We object on these grounds. The Court. I overrule the objection. *Let the record show that I didn't permit the oral argument to be reported.* Mr. Solomon objected to that fact." (Emphasis supplied.) Obviously the trial court labored under mistaken impression that if the oral argument was not reported, no error could be successfully enumerated as to improper argument. But the trial judge did not disagree with defendant's contention as to what State's counsel had argued; and such failure is in effect an admission that he

did make such argument. See Code § 38-409. If the trial judge had asserted that *no such argument was made* this would have ended the matter. But neither the trial judge, nor State's counsel denied that the argument had been made as recited by defendant's counsel, and no attempt to alleviate the harm was made. This was obviously reversible error. Counsel may not ask the jurors to substitute themselves for the party, or to take the party's place and consider the case from that posture. This is often referred to as the "golden rule argument." The jurors do not represent themselves, they are not allowed to try their own case; but they, as a group of 12 fair and impartial jurors, must consider the case with the utmost objectivity, and return a unanimous verdict as would be returned by impartial jurors. *Earl v. Edwards,* 117 Ga. App. 559 (3) (161 SE2d 438); *Doe v. Moss,* 120 Ga. App. 762, 767 (172 SE2d 321); 70 ALR2d 935.