### A90A0411. CARLIN v. FULLER.
#### (395 SE2d 247)

DEEN, Presiding Judge.

On June 15, 1981, the appellee, Alta Mae Fuller, sold almost 519 acres of land to James Bland, who executed a promissory note and a deed to secure debt in favor of Fuller. The promissory note provided for a specific disposition of proceeds from the sale of any timber on the land. On February 16, 1982, Bland sold the property to the appellant, M. A. Carlin, who assumed the note and leased the property back to Bland. Subsequently, the house on the property burned, and the homeowner's insurance carrier (on a policy purchased by Bland) paid $20,000 to Fuller instead of Bland under the standard mortgagee clause because of Bland's misrepresentation of ownership at the time of the application.

Carlin eventually commenced this action against Fuller seeking (1) a credit for the insurance proceeds against the note she assumed in purchasing the property; (2) injunctive relief requiring Fuller to consent to the cutting and sale of timber on the land; and (3) damages for conversion of a sugar cane mill that was removed from the property by Fuller's husband. Fuller counterclaimed for $270 proceeds from the sale of timber on the property, and for damages for abusive litigation. The trial court granted summary judgment for Fuller on Carlin's claims for the insurance proceeds and for consent to the harvesting of timber on the land, and this court affirmed that adjudication. *Carlin v. Fuller*, 189 Ga. App. 845 (377 SE2d 877) (1989). Subsequently, the trial court directed a verdict against Carlin on the conversion claim, and directed a verdict for Fuller on the claim for $270 proceeds from the sale of timber. The jury returned a $335,000 verdict for Fuller on the abusive litigation claim, and this appeal followed. *Held*:

1. When Fuller sold the land to James Bland, on the property there was a sugar cane mill placed in a shed which was attached to four posts in the ground. The Fullers testified that they had made it clear at the time of the sale that the purchase did not include the sugar cane mill, which belonged to Fuller's husband. Bland denied that, and instead claimed that he only allowed Fuller's husband to come on the land and use the sugar cane mill at his pleasure. After Bland sold the land to Carlin, Fuller's husband removed the mill and sold it to an antiques dealer. The trial court properly directed verdict

for Fuller, on the basis that there was no evidence that Fuller, as opposed to her husband, had anything to do with the removal of the mill. Fuller's testimony on cross-examination that she would not give her husband a hard time about it if he had wanted to sell something out on the property, did not establish an agency between Fuller and her husband.

2. The note held by Fuller provided that any proceeds from the cutting of timber on the land were to be applied against the amount due under the note. In 1983, Fuller's husband discovered and stopped a sawmill crew cutting timber on the property. That sawmill consequently tendered a check for $270 to Fuller, made out to Fuller and Carlin as joint payees, to cover 6 cords of wood it had cut down. Fuller sent the check to Carlin, who never endorsed the check or returned it to Fuller because she thought the sawmill had cut down more than 6 cords. The evidence provided no defense to Fuller's claim for the $270, and the trial court thus properly directed a verdict for Fuller on that claim.

3. In her counterclaim, Fuller originally sought $50,000 for damages to her peace of mind and wounded feelings, plus $10,000 for expenses of litigation. On the day of trial, Fuller sought leave to amend the counterclaim to increase the prayer for damages to $1 million, but the trial court considered it unconscionable to raise the demand at that time. Fuller also at that time elected to pursue damages for peace of mind and wounded feelings solely under OCGA § 51-12-6. At the close of the evidence, however, the trial court allowed the amendment to the counterclaim to remove any specific cap on the amount of damages sought. The end result was the $335,000 verdict for Fuller.

OCGA § 51-12-6 provides that "[i]n a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded." During closing argument, Fuller's counsel emphatically argued that Carlin "needs to be punished and penalized so that she won't ever think about doing it again." Counsel for Carlin objected that such argument improperly invited the jury to award punitive damages, and requested curative instructions, but the trial court overruled the objection.

Fuller's closing argument clearly asked for punitive damages, and this was improper. "It is, upon timely objection, error to decline to rebuke counsel and to give cautionary instructions to the jury. [Cits.] The gist of the error is that where the rebuke is not made or cautionary instructions given the improper argument goes with the apparent sanction of the court. [Cit.]" *Howard v. Renfroe*, 93 Ga. App. 59, 62 (90 SE2d 598) (1955). The trial court erred in not instructing the jury

accordingly, and given the size of the verdict we cannot say that the error was harmless.

It is true, as the dissent points out, that during closing argument both parties engaged in developing a metaphor, with the parties as feuding children and the jury as the parent who bore the task of deciding which "child" was at fault and in need of discipline. But this metaphorical analysis, even though it literally referred to punishment, did not address the matter of punitive damages, the purpose of which is to compensate for wounded feelings or to deter the wrongdoer from repeating the trespass. OCGA § 51-12-5, generally; *Westview Cemetery v. Blanchard*, 234 Ga. 540 (216 SE2d 776) (1975). The issue of punitive damages was not raised until counsel for Fuller declared that Carlin "needs to be punished and penalized so that she won't ever think about doing it again." There was nothing metaphorical about this argument, and counsel for Carlin promptly and properly objected. Consequently, contrary to the position of the dissent, Carlin did not "open the door" to this issue, and did not waive any objection to the impermissible request for punitive damages.

4. With regard to Carlin's remaining enumerations of error, we find no reversible error.

*Judgment reversed. Banke, P. J., Birdsong, Sognier, Pope and Cooper, JJ., concur. Carley, C. J., McMurray, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent to the reversal, which is based on the trial court's failure to give curative instructions after objection to the mention of punishment in the argument of counsel for the party asserting the *Yost* claim.

In the opening part of the closing argument, counsel had focused on the behavior of plaintiff in bringing what was described as an unjustifiable lawsuit and asked the jury "to award [Mrs. Fuller] damages for having to put up with Mrs. Carlin since 1983; for having to come into court and defend herself when [Mrs. Carlin] had no claim to any of the areas that she asserted a claim to."

The plaintiff Carlin's counsel argued. He told the jury that "it's up to you to decide whether discipline is needed against one or the discipline is needed against both or whether both should have learned from this experience and need to go away from here learning from that experience and having gained enough knowledge in this case, if nowhere else, to know that it does not pay to misunderstand one another, to bicker with one another, that you ought to have it clear up front and understood. . . . The judge will tell you what the law is as it applies to the case, but then you will apply the law to the facts. . . . [Mrs. Fuller's] coming into this court . . . saying, hey,

look, this woman over here's been bad to me. She — She's been saying bad things about me or she's giving me a hard time and I don't like it and I want you to punish her. I want you to really punish her bad. That's what they're saying, in effect. Well, before you decide to punish a child you're going to want to determine, hey, did that child really do something that bad that needs — you know, that I'm going to need to beat 'em for it, that I'm going to need to ground 'em for, or I'm going to need to do anything other than give them a talking to, or is the one doing the complaining the one we need to discipline or show them that that's not the right thing to do and how do you do it. I can't tell you how to do it. I mean, I'm just trying to give you an idea of kind of what you're looking at. . . . Now, are we (the jury) going to spank one of ya'll (the parties) or are we going to punish one of ya'll in some way because of this misunderstanding that apparently was not malicious or intentional, but it happened, or are we going to hope that you've got the good sense to leave this thing alone? That's what we're (counterdefendant) asking you to do, is to let these folks be adults. . . . They're (counterclaimant) asking for you all to really throw it to Mrs. Carlin. Two children had a misunderstanding on the playground and they want you to go out and beat the daylights out of one of them. If you think that's the fair thing to do, it's your decision."

After that argument, in which the idea of punishment was repeatedly mentioned, the *Yost* claimant's other counsel closed the argument. He dwelt at length and heavily on actions of plaintiff Carlin in bringing the lawsuit and on the suffering of the elderly Mrs. Fuller. In rebuttal to the argument of Mrs. Carlin's counsel, he pointed to a portion of her complaint and said: "You talk about children fighting back and forth and children need spanking. That one allegation deserves Mrs. Carlin a good spanking." No objection was made.

In alluding to Mrs. Carlin's "worldly circumstances" and experience in lawsuits, counsel argued: "A million dollar verdict against this lady isn't going to hurt her." Because of what she did, "She needs to be punished." No objection was made to either statement.

In winding up, counsel focused on the harm done to Mrs. Fuller and concluded that "[Mrs. Carlin] needs to be punished and penalized so that she won't ever think about doing it again." It was then that counterdefendant's counsel objected to argument about penalties, stating that "he's not asked for that in the case and I think that the court might need to address that with the jury." The court overruled the objection and proceeded to charge the jury.

In the instructions, the court fully charged on the elements of a *Yost* claim and explained that "Mental suffering occurs when a person has suffered injury by the conduct of another which is willful or wanton and reckless disregard of the consequences of that conduct."

The court made it clear that the only damages sought for bringing what Mrs. Fuller claimed was a lawsuit "without any substantial justification" were damages for the injury "to the peace, happiness or feelings of Mrs. Fuller." The court explained that "damages are given as pay or compensation for injuries done . . . fair to both parties."

The court instructed that the measure of damages for this described injury was the jury's enlightened conscience, and that it should consider "the worldly circumstances of the parties, the amount of bad faith in the transaction, and all of the attendant facts about the case." It concluded on the subject of damages by stating: "After you do that then you would fix such sum as you think would be reasonable, fair and just in your enlightened conscience."

The pleadings went out with the jury, and there is no mention whatsoever of punitive damages in the counterclaim. Instead, it asks for damages for what the counterclaimant has suffered.

In this setting, reversal is not warranted. The following reasons mandate affirmance:

1. The subject of punishment was brought up by the party who now complains about it. Her complaint is vacuous. If there was any confusion in the jurors' minds, she initiated it. *Price v. Hitchcock,* 174 Ga. App. 606, 607 (2) (330 SE2d 807) (1985); *Pegg v. State,* 183 Ga. App. 668 (2) (359 SE2d 678) (1987).

2. What appellant specifically complains about was simply a response to what appellant had argued, a use of the same metaphor. No harm ensued. *Smith v. Smith,* 125 Ga. App. 257, 258 (4) (187 SE2d 330) (1972).

3. When the objection was made, it was too late. Argument of the very same nature had been made earlier, without objection, and the repetition was merely cumulative. *Steverson v. Hosp. Auth. of Ware County,* 129 Ga. App. 510, 514 (2) (199 SE2d 881) (1973).

4. The tort known as a *Yost* claim is by its very nature punitive. It allows a person to be punished by the imposition of monetary damages of some species or another for bringing a frivolous lawsuit. It is a sanction against abuse of the civil court system. Thus to talk of "punishment" in this broad sense is not out of line even when the sole injury claimed is to the peace, happiness, or feelings of the claimant under OCGA § 51-12-6.

5. Mrs. Fuller's counterclaim, her argument, and most importantly here, the court's charge, made it abundantly clear to the jury that the damages, if any, were to be within the confines of that Code section.

DECIDED MAY 18, 1990 —
REHEARING DENIED JUNE 21, 1990 — CERT. APPLIED FOR.

*Jones, Brown & Brennan, Taylor W. Jones, Myles E. Eastwood, Sylvester & Associates, Chuck Sylvester*, for appellant.

*Smith & Harrington, Will Ed Smith, Harrison, Harrison & Llop, Milton Harrison, Rita J. Llop*, for appellee.