27692. JENKINS v. THE STATE.

SUBMITTED FEBRUARY 12, 1973 — DECIDED JULY 2, 1973.

*Smith, Gardner, Wiggins, Geer & Brimberry, Peter Zack Geer, Charles F. Hatcher,* for appellant.

*Robert Reynolds, District Attorney, Tony H. Hight,* for appellee.

JORDAN, Justice. Billy Jenkins appeals his conviction and sentence for the offense of distributing obscene materials. The conviction is based on the fact that he exhibited the film Carnal Knowledge in a movie theater in Albany, Georgia.

The threshold question to be decided is whether or not the showing of the film Carnal Knowledge violates Code Ann. Ch. 26-21 prohibiting the distribution of obscene materials. The trial jury, under proper instructions from the court, has found the defendant guilty. After a review of the record and a viewing of the film by this court we affirm.

Code Ann. § 26-2101 (b) provides that "Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing

such matters." The accusation charges the defendant "with the offense of distributing obscene material." The accusation without expressly referring to Code Ann. § 26-2105 is then cast in the language of the prohibited acts as defined in Code Ann. § 26-2011. The appellant contends that the accusation is defective in that it fails to include the definition of obscene materials as defined in Code Ann. § 26-2101 (b). This view is adopted by the minority which seizes upon this alleged defect to hold Code Ann. § 26-2105 unconstitutional.

It is our view that a statute can provide criminal punishment without the definition of obscenity being included within that specific code section. The chapter in which Code Ann. § 26-2105 is included at its very beginning amply defines obscenity and this particular code section, which is merely a part of the chapter, must be read in accordance with the entire chapter. This court has held that sections of the code which relate to the same subject matter shall be construed together. See *Touchton v. Echols County,* 211 Ga. 85, 87 (84 SE2d 81). It seems clear then that the definition of obscenity as set forth in the chapter applies to all of the code sections dealing with this same question.

The trial court correctly charged this definition of obscenity as the guideline for the jury to apply in this particular case. In Roth v. United States, 354 U. S. 476 (3) (77 SC 1304, 1 LE2d 1498), it was held that "obscenity is not within the area of constitutionally protected freedom of speech or press." Memoirs v. Massachusetts, 383 U. S. 413 (86 SC 975, 16 LE2d 1), gave a test of obscenity to the effect that it must be established that the dominant theme appeals to prurient interest, the material affronts contemporary community standards, and is utterly without redeeming social value. This test has been included in our law (Code Ann. § 26-2101 (b)) thus making our present statute considerably more restrictive than the new test set forth in the recent case of Miller v.

California, No. 70-73, 41 LW 4925. The Miller case, supra, further held that juries can consider State or local community standards in lieu of "national standards," thereby bringing the holding of this court in *Gornto v. State,* 227 Ga. 46 (178 SE2d 894) in line with Miller, supra, on this point.

This court has held that the exhibition of an obscene motion picture is a crime involving the welfare of the public at large, since it is contrary to the standards of decency and propriety of the community as a whole. *Evans Theatre Corp. v. Slaton,* 227 Ga. 377 (180 SE2d 712). In *Slaton v. Paris Adult Theater I,* 228 Ga. 343 (185 SE2d 768), this court held that the films involved in that case were "hard core" pornography and that the commercial exhibition of such pictures is not protected by the first amendment. The Supreme Court of the United States which in effect affirmed the *Paris* case, supra, held that states have a legitimate interest in regulating commerce in obscene material and its exhibition in places of public accommodation, including "adult" theaters; further holding that the exhibition of obscene material in such places of public accommodation is not protected by any constitutional doctrine of privacy, and that a commercial theater cannot be equated with a private home. See Paris Adult Theatre I v. Slaton, No. 71-1051, 41 LW 4935.

We hold that the evidence in this record amply supports the verdict of guilty by the showing of the film Carnal Knowledge in violation of the definition of distributing obscene materials under our Georgia statutes.

*Judgment affirmed. All the Justices concur, except Undercofler, Hawes, and Gunter, JJ., who dissent.*

GUNTER, Justice, dissenting. The majority has today affirmed the criminal conviction of the appellant for showing the motion picture "Carnal Knowledge" to a theatre audience in Dougherty County, Georgia. The

majority has held that the exhibition of this film in this "local community" is not entitled to the protection of the First Amendment as applied to Georgia and this "local community" by the Fourteenth Amendment. I am in disagreement with the majority, and I respectfully dissent. Having viewed this film with the other members of the court, I must say, quite subjectively of course, that it is inconceivable to me that this work can be relegated to that area of verbal, written, and performing expression which falls outside of the protection of the First Amendment to the Constitution of the United States. Today's majority decision has drastically narrowed the concept of the First Amendment as applied to the performing arts in Georgia and "local communities" in Georgia.

I am in disagreement with my brothers of the majority for several reasons, and I shall attempt to set them forth in this dissent.

## I.

The decision of the Supreme Court of the United States in Miller v. California, 41 LW 4925 (decided June 21, 1973), inaugurated a new era in the continuing constitutional contest between obscenity-pornography and the First Amendment. As the Miller decision said, the history of the Supreme Court's obscenity decisions has been "somewhat tortured." 41 LW 4926. I would go one step further and say that the Supreme Court's decisions in this area, handed down during the recent and relatively short period of the First Amendment's entire history, have made it impossible for a dealer in such material to make a determination, with any degree of certainty, as to whether the material falls within the protection of the First Amendment or falls outside of its protection.

Miller gave a new definition of pornographic, un-protected material; Miller laid down basic guidelines for the trior of fact to use in determining what is

protected material from what is unprotected material; Miller changed the yardstick for measuring obscene material from "national standards" to "contemporary community standards"; and Miller reiterated that if the application of its definitions, guidelines, and standards does not sufficiently protect First Amendment rights in any case, then First Amendment values are "adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."

In the case at bar the film "Carnal Knowledge" was shown by the appellant to a theatre audience in Dougherty County, Georgia; a warrant and accusation were issued against the appellant charging him with having committed a crime by showing the film; and the appellant's trial and conviction by a jury followed. All of this took place in the first four months of 1972, long before the changing of definitions, guidelines, and yardsticks of measurement by the Miller decision rendered June 21, 1973. Yet the Miller criteria have been applied by the majority in this case in affirming the appellant's conviction. That cannot be done, and for the majority to have done it in this case is, in my view, a denial of due process of law to the appellant.

In 1972 the appellant had every legal right to believe that the yardstick that he was to use in distinguishing unprotected from protected material was "national standards." The Supreme Court's opinion in Jacobellis v. Ohio, 378 U. S. 184 (84 SC 1676, 12 LE2d 793) (1964), now relegated by Miller to a mere plurality decision, said (p. 195): "We thus reaffirm the position taken in Roth to the effect that the constitutional status of an allegedly obscene work must be determined on the basis of a national standard." Six Justices made up the Jacobellis majority, and not one of them gave the slightest indication that a national standard was not the yardstick to be applied.

Understandably then, appellate court judges or persons dealing in material that might be unprotected legitimately used a national standard yardstick to determine for themselves whether the material was protected or not. In the case of *Feldschneider v. State,* 127 Ga. App. 745 (195 SE2d 184) (1972), the Court of Appeals of Georgia said (p. 749): "The trial court erred in limiting the meaning of contemporary community standards to 'the local community—to your own community.' If we were allowed to apply and be guided by the recent *Gornto* case by the Supreme Court of our own state, the trial court's charge would have been correct; but we are controlled by the three recent decisions of the United States Supreme Court, to wit, Jacobellis, Manual Enterprises and Roth, supra, and consequently, we hold that the trial court's charge in these two instances constituted reversible error." To the same effect is the decision in *Fishman v. State,* 128 Ga. App. 505 (1973), where a 7-2 majority of our Court of Appeals said (p. 508): "The community standards to be applied are those of the national, not the immediate local community."

In January, 1972, when the motion picture "Carnal Knowledge" was exhibited by the appellant, the film had shown in the major cities of the nation, the major cities in Georgia, and in many of the cities and towns in Georgia without any contention being publicly made that it was obscene-pornographic.

"Carnal Knowledge" was reviewed in July, 1971, in the Saturday Review, the Washington Post, the New York Daily News, Time, the Atlanta Constitution, and the Atlanta Journal. None of these reviews gave the slightest indication that the film was obscene-pornographic. Terry Kay, Atlanta Journal amusements editor, concluded the review in that Georgia paper as follows: "In the end there is no real triumph for the characters. Different attitudes, perhaps, but no triumph.

"The effect is with the viewer, who—like it or not—has

been stung to the quick by a prodding of human values.

"So what does 'Carnal Knowledge' tell us? Simply that we are victims, or subjects to be victimized, by the very life-system we create for ourselves.

" 'Carnal Knowledge' says it with sex. It is theatrical that way—sex being the denominator common to everyone. But it could be said about any facet of our lives.

"It is a movie that will be controversial in the heaviest sense of the word, but it is still one of the best that we have had in a long time."

In Miller the Chief Justice of the United States said (p. 4929): " . . . a 'national' standard of First Amendment protection enumerated by a plurality of this court, was correctly regarded at the time of the trial as limiting state prosecution under the controlling case law." However, the Chief Justice then went on to say that since the appellant in that case did not raise the "national standard" issue at the trial but only on appeal, the trial court's charge to the jury that it consider state community standards was not a constitutional error.

To me, this retroactive application of the Miller yardstick as opposed to the Jacobellis yardstick has the effect of saying that a theatre operator could rely on Jacobellis in January, 1972, in deciding whether to exhibit a film, but in April, 1972, when he was tried before a jury for exhibiting the film, it was all right for the Court and jury to completely ignore the standard established by Jacobellis and apply a different standard which had not at the time of the trial been enunciated and which would not be established by the Supreme Court of the United States until June 21, 1973.

I should add that in the present case the "national standard" issue was raised by the appellant in both the trial court and the appellate court.

The majority here today has retroactively applied the Miller "contemporary community standards" yardstick in affirming a criminal conviction, thereby depriving

appellant of his legal right in January, 1972, to have applied a "national standard" yardstick in making his decision that the film "Carnal Knowledge" came within the protection of the First Amendment.

If, between the time of Jacobellis and the time of Miller, the Justices of the Supreme Court of the United States did not know what yardstick to apply, and then changed rather dramatically from one to the other, how can a theatre manager in Georgia be faulted, much less criminally convicted, for having made a decision in 1972 based on the Jacobellis national standard?

The retroactive application of Miller in this manner in this case by the majority has, in my opinion, deprived appellant of due process of law under both the Georgia and Federal Constitutions.

## II.

Assuming that what I have said heretofore, to the effect that the retroactive application of local community standards in this case is constitutionally impermissible, is incorrect, and the majority today holds that I am wrong on this point, then the film "Carnal Knowledge" is, in my judgment, entitled to the protection of the First Amendment even after applying local contemporary community standards.

Miller, as was noted earlier, reasserts that First Amendment values "are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." P. 4928.

The so-called plurality opinion in Jacobellis said (p. 190): "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected. . . . We would reiterate . . . that 'the portrayal of sex, e.g., in art,

literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press.' . . . It follows that material dealing with sex in a manner that advocates ideas, . . . or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied the constitutional protection."

As I read the majority opinion in Miller, it approved and reaffirms these enunciations procreated into constitutional law in Jacobellis by a mere plurality of the Justices.

If there ever has been or will be a case where independent appellate review of the facts as to whether the material involved is constitutionally protected is necessary to protect First Amendment values, then the case at bar is the case.

This court has conducted an independent review. We have seen the film "Carnal Knowledge."

Four members of this Court deem it to be obscene, pornographic, unprotected material. Three members of this Court, including the writer; would hold it to be constitutionally protected material.

In Division 4 of the Miller opinion the Chief Justice said: "The dissenting Justices sound the alarm of repression. . . These doleful anticipations assume that courts cannot distinguish commerce in ideas, protected by the First Amendment, from commercial exploitation of obscene material."

My experience with this one case teaches me that the "alarm of repression" was validly sounded; it also teaches me that the Miller majority's assumption, that courts can distinguish commerce in ideas that is protected from commercial exploitation of obscene material that is not protected, is a too optimistic assumption. The instant case is the proof that is in the pudding; material is pornographic and unprotected in the subjective mind and senses of one judge; and that same material has serious

literary or artistic value in the subjective mind and senses of another judge; all of which leads me to repeat that often-stated assertion by lawyers: a majority of the Justices of the Supreme Court of the United States is not final because the members of that majority are infallible, —that majority is infallible only because it is final.

If the motion picture "Carnal Knowledge" is not entitled to judicial protection under the First Amendment's umbrella, then future productions in this art form utilizing a sexual theme are destined to be obscenely soaked in the pornographic storm.

### III.

The appellant's conviction should not be affirmed because he was not legally accused of having committed a crime.

A warrant was issued for the appellant for having violated Code Ann. § 26-2105. This Code Section was enacted by the Georgia legislature in 1971, and this case is the first time that this Court has given consideration to it.

This statute, as relevant in this case, provides as follows: "(a) Every person who, during the course of a... motion picture ... engages in conduct which would be public indecency under section 26-2011 if performed in a public place, shall be guilty of participation in indecent exposure and upon conviction shall be punished as for a misdemeanor.   (b) Every person who . . . knowingly exhibits . . . a motion picture . . . containing such conduct shall be guilty of a misdemeanor."

Code Ann. § 26-2011, our public indecency statute, referred to in Code Ann. § 26-2105, is as follows: "A person commits public indecency when he performs any of the following acts in a public place and upon conviction shall be punished as for a misdemeanor: (a) An act of sexual intercourse; (b) a lewd exposure of the sexual organs; (c) a lewd appearance in a state of partial or complete nudity; (d) a lewd caress or indecent fondling of

the body of another person." It is thus seen that the conduct referred to in Code Ann. § 26-2105 is "public indecency" or "indecent exposure." Code Ann. § 26-2105 does not make reference in any manner whatsoever to "obscene materials."

Prior to arraignment and trial the appellant attacked and moved to dismiss the accusation that was preferred against him based on the warrant. His contention was that the warrant and the accusation were based on the 1971 Georgia statute (Code Ann. § 26-2105), and that the 1971 Georgia statute was unconstitutional. The trial judge overruled these constitutional attacks.

In my opinion the 1971 Georgia statute is patently unconstitutional. This statute attempts to transfer the crime of public indecency into the motion picture art form. This cannot be done if the First Amendment means anything at all, and if a motion picture is a work or material that enjoys protection under the First Amendment. Conduct performed in person and in public, such as indecent exposure, is not protected by the First Amendment. Conduct portrayed in the motion picture art form is protected by the First Amendment unless the portrayal, considered in the entire context of the motion picture, lacks "serious literary, artistic, political, or scientific value" (Miller v. California standard) or is "utterly without redeeming social value" (pre-Miller v. California standard).

In other words, a single or even several acts of public indecency portrayed in a motion picture or described by the written word in a novel cannot be defined as a crime because of the protection given to motion pictures and novels as forms of expression by the First Amendment. The entire motion picture or the novel must be considered as a whole in determining whether the work is pornographic, thus falling outside of the protection of the First Amendment.

The Miller opinion says (p. 4927): "State statutes

designed to regulate obscene materials must be carefully limited. See Interstate Circuit v. Dallas, supra, 390 U. S. 682-685 (1968)."

The 1971 Georgia statute is not "carefully limited." It says that an actor who portrays one or more acts of indecent exposure in a motion picture is guilty of having committed a crime. It further says that one who exhibits a motion picture containing such a portrayal is guilty of a crime.

I think that this 1971 Georgia statute is directly violative of the First Amendment, and I further think that it violates the Fourteenth Amendment in that it is overly broad.

The warrant in this case, and the accusation based on the warrant, charged the appellant only with having violated Code Ann. § 26-2105. In my view this statute is unconstitutional. A criminal charge cannot be founded on a void statute. Therefore, the accusation charged no crime at all, and it should have been dismissed by the trial judge when properly attacked in the trial court.

It follows that I would reverse this criminal conviction.

I respectfully dissent.

HAWES, Justice, dissenting. I join in the dissenting opinion of Mr. Justice Gunter, a classic of legal reasoning and First Amendment wisdom, and I would add nothing to what has been said were it not for my concern for the grave danger to free speech and expression inherent in the majority opinion and about which I cannot here remain silent.

Two aspects of the opinion of the majority which are of most concern to me are the following: (1) the tacit approval of small towns and hamlets as being the "community" from which the standard for obscenity is drawn; and (2) the determination by four members of this court, upon an independent appellate review, that the film Carnal Knowledge is obscene, that is, that it has no artistic or literary value and is "utterly without

redeeming social value." To give approval to the first would be to place in the hands of the few the tastes and the cultural advancement of the many who are members of the greater state community and to deny in large measure the basic freedom of individuals to participate as they will in the general commerce of ideas. And to approve of the latter would be to equate realistic commentary on our sexual natures in a social context with that of obscenity, an equivalence surely belied as a matter of constitutional law and as a matter of fact. Certainly, the film under consideration here is not the kind of hard-core pornography we removed from public consumption in *Slaton v. Paris Adult Theater I,* 228 Ga. 343 (185 SE2d 768) (1971).

I add these few remarks only because I believe if the majority opinion is accepted we shall have suffered a serious injury to free speech and free expression in Georgia.