[Crim. No. 22506. Second Dist., Div. Five. Aug. 8, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WERNER ERNEST ENSKAT, Defendant and Appellant.

## COUNSEL

Fleishman, McDaniel, Brown & Weston, Stanley Fleishman and David M. Brown for Defendant and Appellant.

Roger Arnebergh and Burt Pines, City Attorneys, David M. Schacter and Edward A. Schlotman, Deputy City Attorneys, for Plaintiff and Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim and Dirk L. Hudson, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**COLE, J.\***—This is a pornography case, here on certification by the Appellate Department of the Superior Court of Los Angeles County on its own motion. When we accepted the case and ordered it transferred here, we did so primarily to decide whether the municipal court erred in instructing the jury that it could disregard expert testimony of community standards if it found that the conduct in question was so patently offensive as to violate any conceivable community standard.

---

\*Assigned by the Chairman of the Judicial Council.

That question and other issues previously presented in the appeal have now been overshadowed by a new contention that Penal Code sections 311 and 311.2 are unenforceable[1] as a result of decisions of the United States Supreme Court handed down on June 21, 1973.[2] We proceed now to discuss that contention and deal subsequently in this opinion with the earlier raised issues.

Appellant Werner Enskat was convicted by a municipal court jury of violating Penal Code section 311.2.

The conviction arose from his exhibition of what was alleged to be an obscene sound motion picture entitled, "The Collection."[3] The applicable part of section 311.2 provides, ". . . Every person who . . . possesses . . . with intent to . . . exhibit to others or who . . . exhibits to others, any obscene matter, is guilty of a misdemeanor." Section 311 provides, so far as relevant here, ". . . 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion; and is matter which taken as a whole

---

[1] All statutory references are to the Penal Code.

[2] These opinions are *Miller* v. *California*, 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607] (hereinafter *Miller*); *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628] (hereinafter *Paris*); *United States* v. *Orito*, 413 U.S. 139 [37 L.Ed.2d 513, 93 S.Ct. 2674] (hereinafter *Orito*); *Kaplan* v. *California*, 413 U.S. 115 [37 L.Ed.2d 492, 93 S.Ct. 2680] (hereinafter *Kaplan*); *United States* v. *12 200-Ft. Reels of Film*, 413 U.S. 123 [37 L.Ed.2d 500, 93 S.Ct. 2665] (hereinafter *12 200-Ft. Reels*). The federal Supreme Court on June 25, 1973 also decided three other cases in the field of obscenity: *Heller* v. *New York*, 413 U.S. 483 [37 L.Ed.2d 745, 93 S.Ct. 2789] (hereinafter *Heller*); *Roaden* v. *Kentucky*, 413 U.S. 496 [37 L.Ed.2d 757, 93 S.Ct. 2796] (hereinafter *Roaden*); and *Alexander* v. *Virginia*, 413 U.S. 836 [37 L.Ed.2d 993, 93 S.Ct. 2803] (hereinafter *Alexander*).

[3] On a prior trial a conviction was reversed by the appellate department on the ground that the prosecution had not complied with the best evidence rule (*People* v. *Enskat*, 20 Cal.App.3d Supp. 1 [98 Cal.Rptr. 646]).

goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance." This statutory definition derives from the language of the United States Supreme Court in *Roth* v. *United States*, 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], as amplified in *Memoirs* v. *Massachusetts*, 383 U.S. 413 [16 L.Ed.2d 1, 86 S.Ct. 975]. The extreme difficulty in defining obscenity and in applying the definition to particular fact situations and "the somewhat tortured history of the [United States Supreme] court's obscenity decisions" (*Miller* at p. 20 [37 L.Ed.2d at p.428]) need not be recounted here. It is amply discussed in *Miller* (413 U.S. at pp. 20-24 [37 L.Ed.2d at pp. 428-430]); and in the dissent of Brennan, J., in *Paris* (413 U.S. at p. 73 et seq. [37 L.Ed.2d at p. 467 et seq.]).

### *Does California Still Have an Obscenity Statute?*

*Miller* marks a new turn in obscenity prosecutions. Since it and its companion decisions were handed down, they have been popularly regarded as making it easier for convictions to be secured in obscenity cases. That is so because no member of the United States Supreme Court any longer supports the *Memoirs* definition of obscenity (*Miller, supra,* at p. 23 [37 L.Ed.2d at p. 430]) and in particular, because that part of the definition which required obscene matter taken as a whole to be " '*utterly* without redeeming social value' " has been abandoned. In its place the court has adopted a different standard: "whether the work, taken as a whole, lacks serious literacy, artistic, political, or scientific value." (*Miller* at p. 24 [37 L.Ed.2d at p. 431].)

We turn then to a discussion of the problem posed to us by *Miller*. Appellant argues vigorously that the Supreme Court's abandonment of the *Memoirs'* test, upon which the definition of obscene matter in section 311 is based, renders that statute and its application to appellant's case unenforceable. This argument requires us to examine closely into the Supreme Court's holding in *Miller*. That case, as the one at bench, involved sections 311 and 311.2. Specifically at issue in *Miller* were five unsolicited advertising brochures primarily consisting "of pictures and drawings very explicitly depicting men and women in groups of two or more engaging in a

variety of sexual activities, with genitals often prominently displayed." (*Miller, supra,* at p. 18 [37 L.Ed.2d at p. 427]). After pointing out that it has been "categorically settled" that obscene matter is unprotected by the First Amendment, the court stated that it acknowledged, however, ". . . the inherent dangers of undertaking to regulate any form of expression." (*Miller, supra,* at p. 23.) Accordingly, the court continued "State statutes designed to regulate obscene materials must be carefully limited. [Citation omitted.] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. [Fn. omitted.] A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. *Kois* v. *Wisconsin* . . . 408 U.S. at p. 230, quoting *Roth* v. *United States, supra,* at p. 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the '*utterly without redeeming social value*' test of *Memoirs* . . ." (italics by the Supreme Court, *Miller* at pp. 23-24 [37 L.Ed.2d at pp. 430-431]). The court additionally declared that "We also reject, as a constitutional standard, the ambiguous concept of 'social importance' " (*id.* at p. 25 [37 L.Ed.2d at p. 431]).

Finally, the court said, "We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, *supra*:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

Building on *Miller's* holding that the permissible scope of state statutes regulating obscene material is confined to works depicting or describing sexual conduct *specifically defined* by the applicable state law as written or authoritatively construed, appellant now argues that sections 311 and 311.2 are facially vague and overbroad because they fail to specifically define proscribed depictions or representations of sexual conduct. He further argues that California appellate courts have not had the occasion to authoritatively construe those sections so as to limit their reach to specifically defined sexual conduct. Also, appellant asserts, the statutory element that the work must be "utterly without redeeming social importance" has been rejected by the Supreme Court as impermissible. The upshot of the argument is appellant's contention that he has been denied due process and that his case was submitted to the jury "in the absence of viable legal standards." He urges that "the new and prospective standards" enunciated in *Miller* cannot be applied to this case. Relying on *Bouie* v. *City of Columbia,* 378 U.S. 347 [12 L.Ed.2d 894, 84 S.Ct. 1697], he argues that if a statute is vague, the vice inherent in that vagueness cannot be cured in the very case under consideration by placing valid limits on the statute. His claim is that this would amount to a retrospective application comparable to ex post facto legislation. Finally, appellant states that separation of powers principles would be violated were this court to judicially rewrite the statutes.

■ We summarize our holding as follows:

(1) The United States Supreme Court has not held section 311 and like state statutes unconstitutional but rather has left it to the states to see if their statutes measure up to the *Miller* requirements.

(2) Except for the requirement that obscene matter be "utterly without redeeming social importance," section 311 has been previously construed substantially in accordance with the *Miller* requirements and the jury was so instructed.

(3) The courts are not at liberty to read out of section 311 the "utterly without redeeming social importance" element of the offense proscribed by that section; that is a matter for the Legislature. However, there is no constitutional reason why the statute as written cannot continue to be applied pending any changes which the Legislature may wish to make in it.

We discuss briefly these propositions.

*First,* in *Miller,* the Supreme Court made it clear that section 311 and like statutes were not unconstitutional.[4] Additionally, in *Kaplan, supra,* 413 U.S. 115, at page 122 [37 L.Ed.2d 492, at page 499], the court held that a book involved there was obscene and not protected by the First Amendment and that ". . . the prosecution's evidence was sufficient, as a matter of federal constitutional law, to support petitioner's conviction." Like *Miller, Kaplan* also involved sections 311 and 311.2.

Orders issued by the United States Supreme Court in disposing of the obscenity cases before it illuminate that court's conclusion that it is possible for a statute either to be limited on remand by judicial construction, or to be held on remand to have been previously so limited. In *Miller,* the order of court was to *vacate,* not reverse, the state court judgment and to remand the case to the Appellate Department of the Superior Court of Orange County, whence it had come, "for further proceedings not inconsistent with the First Amendment standards established by this opinion." (413 U.S. at p. 37 [37 L.Ed.2d at p. 438].) Footnote 7 of *12 200-Ft. Reels* was cited. With one exception, a similar disposition was made in all of the other state obscenity cases decided by the court together with *Miller.*[5]

---

[4]See *Miller, supra,* footnote 6, 413 U.S. at page 24: ". . . We do not hold, as Mr. Justice BRENNAN intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate. See *United States* v. *12 200-Ft. Reels Film,* . . . at 130 n. 7."

[5]Thus, in *Paris, supra,* 413 U.S. 49, at page 69 [37 L.Ed.2d at page 464], the court held that the state of Georgia could regulate the allegedly obscene materials involved and provided that the applicable Georgia law as written or authoritatively interpreted by Georgia courts met the *Miller* requirements. Judgment was vacated and the case was remanded to the Georgia Supreme Court for proceedings not inconsistent with *Miller.* Again, *12 200-Ft. Reels* was cited. Similar dispositions were made in *Kaplan* (413 U.S. at p. 122 [37 L.Ed.2d at p. 499]); *Heller* (413 U.S. at p. 494 [37 L.Ed.2d at p. 755]) and *Alexander* (413 U.S. at p. 836 [37 L.Ed.2d at p. 994]). The only state case where a reversal resulted was *Roaden* (413 U.S. 496, 506 [37 L.Ed.2d 757, 766]), and such a disposition was necessitated by the court's holding that the material there involved had been improperly seized in violation of the Fourth and Fourteenth Amendments.

To be contrasted is the disposition of the obscenity cases in *12 200-Ft. Reels.* There, the material had been seized at a port of entry under a federal statute prohibiting importation of "obscene or immoral" matter. The federal trial court held the statute under which the seizure resulted unconstitutional on its face. Reversing that decision, the United States Supreme Court returned the case to the trial court to determine whether the material involved was obscene in the light of *Miller*.[6] The court then noted in footnote 7, 413 U.S. at page 130 [37 L.Ed.2d at page 507], that while the construction of state legislation should be left to state courts, the Supreme Court had a duty to authoritatively construe federal statutes where a serious doubt of constitutionality is raised and continued, ". . . If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see *United States* v. *Orito, supra,* . . . we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in *Miller* v. *California, supra,* . . ."

*Second,* we need not discuss further the first element of section 311—that obscene matter is matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards is to prurient interest. It is identical with one of the three *Miller* requirements. And, since we hold that section 311 is to be applied in appellant's case as it has previously been construed (and without eliminating the statutory requirement that an obscene work is one "utterly without redeeming social importance") we pause but briefly with appellant's contention that section 311 has not been authoritatively construed in the past so as to limit its reach to specifically defined sexual conduct.[7] The contention is incorrect.

In requiring that obscene matter must go "substantially beyond contemporary limits of candor in description or representation of such matters," the statute is substantially the same as the general *Miller* formulation which inquires "whether the work depicts or describes, in a patently offensive, way, sexual conduct." *Miller* states that those matters must be "specifically defined by the applicable state law." Previous California cases have so limited section 311. Thus, it is clear that section 311 prohibits only "hard-core pornography" (*Zeitlin* v. *Arnebergh,* 59 Cal.2d 901 [31 Cal.Rptr. 800,

---

[6] A similar result was reached in *Orito*.

[7] Because of this holding, it is unnecessary to consider further appellant's argument that a statute cannot be given a limiting interpretation in the very case under consideration.

383 P.2d 152, 10 A.L.R.3d 707]),[8] that nudity does not equate with obscenity and that "no matter how ugly or repulsive the presentation, we are not to hold nudity, absent a sexual activity, to be obscene" (*People* v. *Noroff*, 67 Cal.2d 791 at p. 797 [63 Cal.Rptr. 575, 433 P.2d 479]), and that "[t]o constitute obscenity . . . the material must contain a graphic description of sexual activity" (*People* v. *Cimber*, 271 Cal.App.2d Supp. 867, 869 [76 Cal.Rptr. 382]). Further, and with respect to material of similar character to that involved here,[9] *Landau* v. *Fording*, 245 Cal.App. 2d 820 [54 Cal.Rptr. 177] stated with reference to a film depicting, among other things, fellatio, sodomy and oral copulation that "[i]t should be readily apparent from the preceding description that the film goes far beyond customary limits of candor in offensively depicting certain unorthodox sexual practices and relationships." (245 Cal.App.2d at p. 826.)[10] The film was held to be obscene within the meaning of section 311. *Miller,*

[8]In *Miller,* the court said, "Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard-core' sexual conduct specifically defined by the regulating state law, as written or construed." (*Miller* at p. 27 [37 L.Ed.2d at p. 432]).

*Zeitlin* states (at p. 904): ". . . we believe the Penal Code section [311] constitutionally may exorcise only hard-core pornography, and . . . the statute does no more . . ."; (at pp. 911-912): ". . . [*Roth* v. *United States, supra,* 354 U.S. 476] impliedly drew a line of constitutional protection around all material except that which has been described as hard-core pornography . . ."; (at pp. 918-919): "Cognizant of these constitutional guarantees, the Legislature wrote a statute which, in substance, prohibited hard-core pornography; [a footnote which we omit admits that defining hard-core pornography can be difficult] the draftsmen recognized that a wider proscription would trespass upon an area which is constitutionally protected."

[9]We have viewed the film involved here—"The Collection"—as we are constitutionally compelled to. do. We have no hesitation in sustaining the jurors' verdict after making our independent examination of the whole record (*Zeitlin* at p. 909; *Miller* at p. 25 [37 L.Ed.2d at p. 431]). The film graphically depicts homosexual activities of four males.

[10]The jury in the instant case was informed by adequate instructions of the elements of section 311 dealing with prurient interest and depictions or representations going substantially beyond contemporary limits of candor. The jury was further instructed as follows: "You are instructed that nudity and obscenity are not synonymous. The display, live or pictorial, of the nude human body, male or female, or both, in the absence of depicting any sexual activity is not legally obscene. Sex and obscenity are not synonymous. The description or portrayal of sexual activity which does not appeal to prurient interest is not legally obscene. On the other hand, the graphic portrayal or description of sexual activities, the predominant appeal of which is to the prurient interest, is legally obscene, provided the other two elements of obscenity, as previously defined to you in these instructions, have been met."

Further, at the request of the prosecution and over initial defense objection (the objection was withdrawn at oral argument before the appellate department), the municipal court took judicial notice of *Landau* v. *Fording, supra,* and read to the jury the portion of the opinion therein describing the sexual activities depicted, together with the statement from that case that the film there involved went far beyond customary limits of candor.

thus has not imposed any new requirements upon California law insofar as two of the three elements required by section 311 are involved.

*Third, Miller* has, however, eased the prosecutorial burden in obscenity cases by not adopting as a constitutional requirement the "utterly without redeeming social value" test and the concept of "social importance" discussed in *Memoirs* v. *Massachusetts, supra,* 383 U.S. 413 (reported *sub nom. A Book* v. *Attorney General,* 16 L.Ed.2d 1). Section 311 includes that test: ". . . 'Obscene matter' . . . is matter which taken as a whole is utterly without redeeming social importance." This language constitutes one element of the definition of obscenity established by the Legislature.

The California Supreme Court has recently said the following: "In California all crimes are statutory and there are no common law crimes. Only the Legislature and not the courts may make conduct criminal. [Citations omitted.] *Deletion by the courts of one of the statutory requirements of a crime would make conduct criminal which the Legislature has not seen fit to make criminal* and would violate the fundamental principle that there are no common law crimes in this state." (*In re Brown,* 9 Cal.3d 612, 624 [108 Cal.Rptr. 465, 510 P.2d 1017], italics supplied.) See also *In re James M.,* 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33]. This court, thus, may not read out of section 311 the "utterly without redeeming social importance" requirement. To do so "would be to invade the province of the Legislature by redefining the elements of the underlying crime" (*In re James M., supra,* at p. 522) and would thus violate separation of powers principles.

Only two alternatives appear to remain to us: To declare, as appellant would have us do, that in light of *Miller,* California no longer has an obscenity statute or, to hold, as we believe *Miller* and its companions clearly indicate should be the result, that the retention of the "utterly without redeeming social importance" requirement, pending any legislative change in section 311, is not constitutionally fatal. We choose the latter course and proceed to examine the reasons for this conclusion.

In the first place, by adopting a test that matter can be found to be obscene if it merely "lacks *serious* literary, artistic, political, or scientific value" (*Miller* at p. 24 [37 L.Ed.2d at p. 431], italics supplied), instead of being utterly without redeeming social value, the Supreme Court has obviously made it considerably easier for obscenity prosecutions to succeed. With such a relaxation of the prosecutor's burden goes a corresponding increase in "the inherent dangers of undertaking to regulate any form of expression" (*Miller* at p. 23 [37 L.Ed.2d at p. 430]).

These dangers were expressly recognized by the Supreme Court in *Miller*. It is because of them that the court enunciated the new statutory standards which we have discussed at length. It would be most anomalous if the result of the relaxed requirements put on the prosecution by *Miller* and its companion decisions, was the elimination of California obscenity laws pending any legislative reenactment.

In the second place, language in *Miller* itself indicates that the intent of the court was only to require increased specificity in the state laws if the "utterly without redeeming social value" test was abandoned. Thus, in summing up its holding, the Supreme Court said, among other things, that "[W]e . . . hold that [obscene] material can be regulated by the States, subject to the specific safeguards enunciated above, without a showing that the material is *'utterly* without redeeming social value,' . . ." (*Miller* at pp. 36-37 [37 L.Ed.2d at p. 438], italics by the United States Supreme Court.) The Supreme Court nowhere holds that the "utterly without redeeming social value" test is itself unconstitutional. The precise language used by the Court is set forth in the margin.[11]

In the third place, there is no reason at all why state law cannot impose more strict requirements on the prosecution as to the definitions of obscenity than the Constitution would require. That, in effect, is what the "utterly without redeeming social importance" formulation does. In *Paris, supra,* 413 U.S. 49, at pages 53-54 [37 L.Ed.2d 446, at p. 454], the court pointed out that "[i]t should be clear from the outset that we do not undertake to tell the States what they must do, but rather to define the area in which they may chart their own course in dealing with obscene material." Clearly, the states can adopt or retain more restrictive standards for obscenity prosecutions.

Appellant argues that because the Supreme Court has characterized the words, "social importance" as ambiguous, no viable standard remains.

It is clear to us that the focus of the court's decision was not on the ambiguity of "social importance," but rather on the change from works which are *utterly* without value or importance to works which *lack serious* value or importance. The court expressly has retained the concept of "value" as part of the test for obscenity permitted under *Miller*. Yet, the phrases, "social value" and "social importance" not only have been used

---

[11]"We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs* . . ." (*Miller* at p. 24 [37 L.Ed.2d at p. 431].)

"We also reject, as a constitutional standard, the ambiguous concept of 'social importance.'" (*Miller* at p. 25, fn. 7 [37 L.Ed.2d at p. 431], italics by the United States Supreme Court).

interchangeably in Supreme Court decisions, but are synonymous.[12] Thus, though the concept of "social importance" was referred to by the Supreme Court in *Miller* as being ambiguous, its semantic equivalent is set forth as a standard without constitutional defect. Further, the passing reference to ambiguity in *Miller* is only dictum. In light of all the circumstances, it is clear that this court would be remiss in seizing on that reference to invalidate California's obscenity laws.

Additionally, if a claim is made that retention of section 311's requirement that a work be "utterly without redeeming social importance" renders the statute fatally vague, we think the answer is that it is no more vague than the phrases upheld against such challenge in the *Giannini* decision ("lewdly" and "lewd or dissolute" *In re Giannini, supra,* 69 Cal.2d 563, 571 [72 Cal.Rptr. 655, 446 P.2d 535]) or in the phrases treated in fn. 7 of *12 200-Ft. Reels, supra* ("lewd," "lascivious," "filthy," "indecent," "immoral," 413 U.S. at p. 130) or for that matter, than the predecessor language of section 311 upheld against an attack of vagueness in *Alberts* v. *California,* decided in the same opinion as *Roth* v. *United States,* 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304].[13]

In sum, as to the issues raised by *Miller* v. *California* and its companion decisions, we hold (1) that section 311 as heretofore construed, defines obscene matter as required by *Miller,* except as to *Miller's* tolerance of an obscenity finding as to matter which is not utterly without redeeming social importance; (2) that while the work in question here meets the *Miller* test of lacking serious literary, artistic and other values, we cannot apply that yardstick to it, but instead must measure it against the concept of being "utterly without redeeming social importance"; (3) that such measurement is still permissible; and (4) that so measured, the film which appellant was convicted of exhibiting is obscene.

---

[12]Compare the lead opinion in *Memoirs* v. *Massachusetts, supra,* 383 U.S. 413, 418 [16 L.Ed.2d 1, 5-6], written by Brennan, J., "[T]he material is utterly without redeeming social *value*" with Justice Brennan's subsequent opinion in *Jacobellis* v. *Ohio,* 378 U.S. 184, 191 [12 L.Ed.2d 793, 800, 84 S.Ct. 1676], "utterly without redeeming social *importance*" and with Justice Douglas' dissent in *Memoirs, supra,* 383 U.S. at page 426 [16 L.Ed.2d at page 10], "utterly without redeeming social *importance.*" (Italics ours.) The words, "value" and "importance," or their derivatives, also are synonymous. One of the definitions of value (Webster's New Internat. Dict. (2d ed.) p. 2814) is, "relative worth, importance or utility." "Importance" is defined, (Webster's, *supra,* p. 1250) as the "quality or state of being important" and "important" in turn, is defined inter alia, as "of valuable content or bearing."

[13]At the time of the decision in *Alberts,* section 311, among other things, prohibited a person from "lewdly keeping for sale obscene and indecent books," 354 U.S. 476, 481 [1 L.Ed.2d 1498, 1504-1505].

## *Need for Expert Testimony*

We now arrive at the questions originally certified by the appellate department. They are as follows:

"1. Is expert testimony or other evidence of contemporary community standards necessary to convict under Penal Code section 311.2 in all cases?

"2. Where a defendant has introduced expert testimony on the subject of community standards, may the jury be instructed that evidence of community standards is unnecessary and such testimony need not be considered if it finds the material in question is so patently offensive as to violate any conceivable community standard?"

Expert testimony was given by witnesses for both sides as to whether the material was obscene. Over defense objection, the court gave the following instruction at the request of the People: "You are instructed that should you first find that the conduct in question, from all the evidence and beyond a reasonable doubt, is so patently offensive as to violate any conceivable community standard, evidence of community standards is unnecessary; and expert testimony need not be considered upon this issue."[14] It is this instruction which is attacked by appellant. We hold the instruction to be proper.

The requirement that expert testimony must be introduced in obscenity cases on the issue of community standards was introduced in *In re Giannini* (1968) *supra,* 69 Cal.2d 563, 574. Holding that the relevant community to be considered in determining whether a challenged dance violated "contemporary standards" was a statewide one, the court refused to assume that jurors in themselves necessarily reflected those standards. Therefore, expert testimony was required. The court had under consideration, however, a "topless" dance shown only to adults and stated as to it "[s]ince this conduct is not so patently offensive as to violate any conceivable community standard, we need not decide whether evidence of community standards must be introduced in an extreme and unquestionable situation." (69 Cal.2d at p. 576, fn. 8.) Thus, *Giannini* itself, upon which appellant

---

[14]As a matter of language the instruction, taken most literally, is meaningless since it tells the jury that expert testimony need not be considered only if the jury first finds "from all the evidence" that the material is patently offensive. "All the evidence" includes the very expert testimony at issue. However, the parties and the appellate department each treated the case as raising the questions certified to us. The jury also was instructed pursuant to the provisions of section 1127b that it might disregard any expert opinion found to be unreasonable. Under these circumstances, we proceed to decide the certified questions.

relies, does not require that expert testimony be presented in the situation envisaged by the instruction challenged here. Further, section 312.1[15] was adopted by the Legislature after the *Giannini* decision. The section in effect repeals *Giannini* (see *In re Price*, 4 Cal.App.3d 941, 948 [84 Cal. Rptr. 585] [Thompson, J., dissenting]).

In *Paris, supra,* 413 U.S. 49, the United States Supreme Court held that it was not error "to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence." (413 U.S. at p. 56 [37 L.Ed.2d at p. 456]). The court stated that the films there involved were obviously the best evidence of what they represent and that in its decisions since *Roth* v. *United States, supra,* 354 U.S. 476, it had regarded the materials as sufficient in themselves for the determination of the question. Finally, the United States Supreme Court said, "This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 Wigmore, Evidence §§ 556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony . . . 'Simply stated hard core pornography . . . can and does speak for itself.' *United States* v. *Wild,* 422 F.2d 34, 36 (CA2 1970), cert. denied, 402 U.S. 986 (1971). We reserve judgment, however, on the extreme case, not presented here, where contested materials are directed at such a bizarre deviant group that the experience of the trier-of-fact would be plainly inadequate to judge whether the material appeals to the prurient interest. See *Mishkin* v. *New York,* 383 U.S. 502, 508-510 (1966); *United States* v. *Klaw,* 350 F.2d 155, 167-168 (CA2 1965)." *Paris,* at 413 U.S. at p. 56, fn. 6.)

As for the argument that the instruction deprived appellant of the benefit of the testimony of his defense experts, we see no difference in substance between the manner in which the jury was instructed and the

---

[15]Section 312.1. "In any prosecution for a violation of the provisions of this chapter or of Chapter 7.6 (commencing with Section 313), neither the prosecution nor the defense shall be required to introduce expert witness testimony concerning the obscene or harmful character of the matter or live conduct which is the subject of any such prosecution. Any evidence which tends to establish contemporary community standards of appeal to prurient interest or of customary limits of candor in the description or representation of nudity, sex or excretion, or which bears upon the question of redeeming social importance, shall, subject to the provisions of the Evidence Code, be admissible when offered by either the prosecution or by the defense." (The words "or live conduct" were added to the section in 1970.) (Stats. 1969, ch. 925, § 1; amended by Stats. 1970, ch. 1072, § 3.)

provisions of section 1127b. The defense is free to introduce expert testimony (*Kaplan, supra*, at p. 121 [37 L.Ed.2d at p. 498]), but the jurors may disregard it if they find it to be unreasonable. We therefore hold that on the facts of this case, the giving of the instruction was not error and that expert testimony was not necessary to convict appellant.

### Miscellaneous Issues

Other contentions raised by appellant in the appellate department or before us have also been laid to rest by *Paris* and its judicial siblings, and need not be discussed by us. Remaining for consideration is the contention that the film in question was seized under an improper search warrant, a claim that the jury was improperly instructed as to scienter and that there was insufficient evidence that appellant knew the film was obscene and a claim that the court misdefined certain terms in its instructions. As to the scienter instruction, we see nothing wrong with it; the jury was adequately instructed that the People had to prove that appellant was aware of the character of the matter; we know of no requirement that it must be proven that appellant knew the film was obscene separately from the jury's ultimate determination that that is the fact. We decline to search the record to see if the evidence of appellant's knowledge was sufficient. It is appellant's burden to point out all evidence on the issue and he does not purport to do so.

Appellant's contention that the court did not properly define terms in its instructions is not well taken.

█ Insofar as appellant argued to the appellate department that the copy of the film introduced into evidence as Exhibit 1 should have been suppressed, we agree with the decision of the appellate department on that point and adopt it as our own as follows:

"Appellant contends that Exhibit One, a copy of the film, was seized under a warrant, the affidavit for which did not sufficiently show an intent of the possessor of the film to commit a public offense with it (i.e., an intent to distribute or exhibit the film in violation of Penal Code section 311.2) as is required by Penal Code section 1524, subdivision (3).[2]

---

"2 'A search warrant may be issued upon any of the following grounds: . . . 3. When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered.'

"Such warrant authorized the search of premises of one Thomas DeSimone. In surveying this contention we shall assume in appellant's favor, the resolution of the question whether the asserted deficiency in an application to search the premises of a nondefendant can be raised by appellant."

"We do not agree with the contention. This film is sufficiently identified in the affidavit, by its title, as a 16 mm. color film. Moreover, a summary of its contents was given by incorporating in the affidavit the description in the application for a criminal complaint against appellant. The location, 8965 Keith Avenue, Los Angeles, is sufficiently described as a single family residence of wood and stucco with, among others, a louvered door through which could be seen a 'film studio.' Contained within the studio, numerous film cans and some filming equipment could be seen through the door. One film can bearing the name 'The Collection' and one bearing the name 'The Collection—Print 2' could also clearly be seen. The affidavit further alleged that affiant, while on duty investigating obscenity cases, had, on September 19, 1970, observed the film publicly exhibited at the Avon Theater, 7059 Hollywood Boulevard, Los Angeles, where it had been shown for about a week. Facts were also alleged showing that the Avon Theater obtained the film from Signature Films Company, which leased it from Thomas DeSimone. The affidavit showed that the resident at that address was Thomas DeSimone and that affiant had seen DeSimone's name on the film when viewing it at the Avon Theater as the director and co-producer thereof.

"From these facts the magistrate could fairly infer that the copy of the film seized under the warrant was possessed by DeSimone with the intent to commit a public offense (i.e., to distribute or exhibit the film). There was no error in admitting it in evidence."

The judgment of conviction is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 24, 1973.