26631. SLATON et al. v. PARIS ADULT THEATRE I et al.

Ingram, Justice. This case comes before the court again following decision and remand by the United States Supreme Court in Paris Adult Theatre I v. Slaton, 413 U. S. 49 (93 SC 2628, 37 LE2d 446). It began December 28, 1970, when the District Attorney of the Atlanta Judicial Circuit and the Solicitor of the Criminal Court of Fulton County filed separate complaints in the Superior Court of Fulton County against Paris Adult Theatres I and II and certain named individuals, praying for a rule nisi to require the defendants to show cause why the motion picture films "It All Comes Out in the End" and "Magic Mirror" should not be declared obscene and enjoined from exhibition. A temporary

restraining order was thereafter granted ex parte by the trial court restraining the defendants from destroying the films or removing them from the jurisdiction of the court pending a hearing. On January 31, 1971, pursuant to the rule nisi, an adversary hearing was conducted in superior court during which the parties agreed to waive jury trial and a preliminary hearing and submit the cause to the trial court for final determination and judgment. The films were then exhibited to the trial court. The state offered no other evidence at the hearing except for the testimony of the criminal investigators who had paid admission to see the films and who related that nothing on the outside of the theatres indicated the full nature of that which was shown, namely, scenes of simulated fellatio, cunnilingus and group sex intercourse.

After viewing the motion pictures and hearing the evidence, the trial court rendered the following judgment: "The state contends that the motion pictures under review in the above actions are obscene. The titles of the films are, 'It All Comes Out in the End' and 'Magic Mirror.' Assuming that obscenity is established by a finding that the actors cavorted about in the nude indiscriminately, then these films may fairly be considered obscene. Both films are clearly designed to entertain the spectator and perhaps, depending on the viewer, to appeal to his or her prurient interest. The portrayal of the sex act is undertaken; but the act itself is consistently only a simulated one if, indeed, the viewer can assume an act of intercourse or of fellatio is occurring from the machinations which are portrayed on the screen. Each of the films is childish, unimaginative, and altogether boring in its sameness. It appears to the court that the display of these films in a commercial theatre, when surrounded by requisite notice to the public of their nature and by reasonable protection against the exposure of these films to minors, is constitutionally permissible. It is the judgment of this court that the films, even though they display the human body and the human personality in a most degrading fashion, are not obscene. The actions against the defendants, therefore, are dismissed. This 12th day of April, 1971. Jack Etheridge, Judge Superior Court of Fulton County Atlanta Judicial Circuit."

On appeal from the above order, this court unanimously reversed the judgment of the trial court and held that the films were hard-core pornography and that showing of these films should have been enjoined in that their exhibition to consenting adults

was not protected by the First Amendment. *Slaton v. Paris Adult Theatre I,* 228 Ga. 343 (185 SE2d 768) (1971). The United States Supreme Court granted certiorari on June 26, 1972, and thereafter on June 21, 1973, vacated the judgment of this court and remanded the case for further proceedings not inconsistent with its opinions rendered in Paris Adult Theatre I v. Slaton, 413 U. S. 49 (93 SC 2628, 37 LE2d 446) and Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973). See, also, United States v. 12 200-Ft. Reels of Super 8 mm. Film, 413 U. S. 123 (93 SC 2665, 37 LE2d 500) (1973).

On August 27, 1973, we granted counsel for opposing sides and the Attorney General, leave to submit briefs to assist this court in assessing the effect of these opinions upon the earlier judgment of this court and upon the legislative enactments of this state on obscenity.

I.

Overbreadth.

It is now firmly established that "obscenity" is not protected by the Free Speech Clause of the First Amendment and may be regulated by the state. Miller v. California, 413 U. S. 15, supra; Roth v. United States, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) (1957); Chaplinsky v. New Hampshire, 315 U. S. 568 (62 SC 766, 86 LE 1031) (1942). In order to maintain the integrity of the First Amendment and to prevent incursions into areas of protected speech and expression, the United States Supreme Court has made it necessary, however, that regulatory statutes be carefully limited to define specific sexual conduct to whose depiction and description they apply. Miller v. California, 413 U. S. 15, supra. In Miller and in United States v. 12 200-Ft. Reels of Super 8 mm. Film, 413 U. S. 123, supra, the court made clear that this statutory requirement could be met by specific legislation, as e.g., Oregon Laws 1971, c. 743, Art. 29 §§ 255-62 and Hawaii Penal Code, Title 37, §§ 1210-16, and as well by authoritative judicial interpretation of legislation such as Code Ann. § 26-2101 (b) (Ga. L. 1968, pp. 1249, 1302).

In Miller, the court settled upon minimal, factual guidelines for describing obscene material. The constitutional test was whether: "(a) [T]he average person, applying 'contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and, (c) the work, taken as

a whole, lacks serious literary, artistic, political, or scientific value." Miller v. California, 413 U. S. 15, supra. In addition, with respect to part (b) of the above test, the court gave examples of permissible statutory definition: "(a) Patently offensive representations or depictions of ultimate sexual acts, normal or perverted, actual or simulated. (b) Patently offensive representations or depictions of masturbation, excretory functions, and lewd exhibition of the genitals."

The definition of obscenity under Georgia statutory law is as follows: "Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters." Ga. L. 1968, pp. 1249, 1302, as amended (Code Ann. § 26-2101 (b)). In the past, this court has defined and described conduct as obscene within the meaning of the Georgia statute in substantially the same language as that suggested by the Supreme Court in Miller. In *Evans Theatre Corp. v. Slaton,* 227 Ga. 377, 379 (180 SE2d 712) (1971), we dealt with depictions of "acts of sexual intercourse, natural, unnatural, bizarre, and violent." In *Walter v. Slaton,* 227 Ga. 676, 680 (182 SE2d 464) (1971), the films were of "actual sexual activity, both natural and unnatural," which included sexual intercourse, fellatio and cunnilingus. For a similar description of obscene material, see *1024 Peachtree Corp. v. Slaton,* 228 Ga. 102 (184 SE2d 144) (1971). These decisions are, in effect, interpretations of that portion of the Georgia statutory definition providing that material "is obscene if . . . its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion . . ." Code Ann. § 26-2101 (b). These cases specifically "limit" the phrase they interpret, and a fair reading of them leads to the conclusion that the Georgia statute was designed to reach only "hard-core pornography," outside of First Amendment protection. *Slaton v. Paris Adult Theatre I,* 228 Ga. 343, 347, supra. They reflect substantially the same descriptive language as that used in the examples of the Supreme Court in Miller: "Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated . . . [and] Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U. S. 15, supra.

We, therefore, conclude that the Georgia statute has been specifically delineated in a manner consistent with the new Miller standards. In rejecting counsel's constitutional challenge to the statute we therefore reaffirm our prior ruling that it is not overly broad or vague in definition. *Gornto v. State,* 227 Ga. 46 (178 SE2d 894) (1970). See Gable v. Jenkins, 309 FSupp. 998 (N. D. Ga. 1969), aff'd. 397 U. S. 592 and noted in Paris Adult Theatre I v. Slaton, 413 U. S. 49, supra, n. 1.

## II.
## Due Process.

The appellees contend that the Georgia statute as construed cannot be applied retroactively and that any detriment found in the Miller guidelines, as opposed to the prior Memoirs guidelines (Memoirs v. Massachusetts, 383 U. S. 413 (86 SC 975, 16 LE2d 1)) (1966) upon which Code Ann. § 26-2101 (b) is based cannot be imposed upon them save in violation of due process of law.

The reply to this argument is that the Georgia statutory definition has been previously authoritatively construed by this court to include those standards for obscenity as permitted by Miller. In addition, the Miller guidelines allow a state to regulate material lacking in serious literary, artistic, political or scientific value, whereas under the Memoirs test (Code Ann. § 26-2101 (b)) the material also must be shown to be "utterly without redeeming social value." See *Jenkins v. State,* 230 Ga. 726 (199 SE2d 183) (1973). Thus, the Memoirs test, as construed to include standards offering greater protections to free speech and expression than those in Miller, is fully applicable to the pre-Miller defendant. See United States v. Thevis, 484 F2d 1149 (1973). Cp. People v. Enskat, 109 Cal. Rptr. 433 (1973), and United States v. 1 Reel of Film, 481 F2d 206 (1st Cir. 1973). There can be no serious question that the appellees have been afforded the benefits of this, the Memoirs test, and that their situation has not been substantially altered by the application of the standards of Miller, already prevailing in this State under statutory and decisional law.

In summary, this court has previously contrued the statutory definition of obscenity in a manner authorized by the new Miller guidelines and therefore has not judicially enlarged Code Ann. § 26-2101 (b). The cases cited by the appellees which prohibit such practice, Rabe .v. Washington, 405 U. S. 313 (92 SC 993, 31 LE2d 258) (1972) and Bouie v. Columbia, 378 U. S. 347 (84 SC 1697, 12 LE2d 894) (1964), are not in point. There has been no

unconstitutional, subsequent, contraction of an overly-broad statute to save its application retroactively. Cp. Cox v. New Hampshire, 312 U. S. 569 (61 SC 762, 85 LE 1049, 133 ALR 1396) (1941), and Shuttlesworth v. Birmingham, 394 U. S. 147 (89 SC 935, 22 LE2d 162) (1969).

## III.
## Standards.

In Miller v. California, 413 U. S. 15, supra, the Supreme Court clarified the "community standards" to which the obscenity guidelines were to apply, disavowing that of the nationwide community in favor of that of the state. In view of Miller and of the constitutional responsibility placed upon this court to conduct independent appellate determinations of the issue of obscenity vel non, we hold the "community" by which the standards for obscenity are gauged is that community or polity which is the State of Georgia.

Secondly, it is also no longer necessary in cases where the materials themselves are available for inspection by the finder of fact that expert testimony be produced on behalf of the prosecution. Paris Adult Theatre I v. Slaton, 413 U. S. 49, supra. See, also, United States v. Groner, 479 F2d 577 (5th Cir. 1973).

Thirdly, the Supreme Court has rejected the ruling of the trial court in Paris Adult Theatre I v. Slaton, supra, that exhibition of obscene material or film to consenting adults is con-stitutionally permissible. The court stated, "We categorically disapprove the theory, apparently adopted by the trial judge, that obscene, pornographic films acquire constitutional immunity from state regulation simply because they are exhibited for consenting adults only. This holding was properly rejected by the Georgia Supreme Court."

And finally, under the standards announced by the Supreme Court in Miller, inhering in prior judicial decisions of this court, and taken in conjunction with Code Ann. § 26-2101 (b), the basic guidelines for determining whether materials or films are obscene in Georgia may be stated substantially as follows:

Applying contemporary community standards and considering the material or film as a whole, the average person would find: (a) its predominant appeal is to a prurient interest in sex; (b) the material or film is a patently offensive depiction or description of sexual conduct, embodying a shameful or morbid interest in nudity, sex or excretion, and going substantially beyond customary limits of candor in describing or representing such

matters; (c) the material or film taken as a whole lacks serious literary, artistic, political or scientific value; and, (d) the material or film taken as a whole is utterly without redeeming social value.

## IV.
## Conclusion.

In the instant case, the films "It All Comes Out in the End" and "Magic Mirror" depicted actors cavorting indiscriminately in the nude, in a manner designed to appeal to the prurient interests; they depicted simulated acts of intercourse and fellatio. This court has already found these films obscene. In *Slaton v. Paris Adult Theatre I,* 228 Ga. 343, 347 (185 SE2d 768) (1971), we said: "The films in this case leave little to the imagination. It is plain what they purport to depict, that is, conduct of the most salacious character."

We affirm our original decision. The court has again conducted an independent appellate review of the films, and they have been exhibited to those members of the court now sitting who did not participate in the prior ruling. These members have likewise concluded that the films are obscene under the above standards. The judgment of the trial court is, therefore, reversed with direction that it enter an order permanently enjoining the exhibition of the films.

*Judgment reversed with direction. All the Justices concur, except Gunter, J., who concurs specially.*

DECIDED OCTOBER 30, 1973.

*Carter Goode, W. Baer Endictor, Thomas E. Moran, Hinson McAuliffe, Thomas R. Moran,* for appellants.

*D. Freeman Hutton, Gilbert H. Deitch, Robert Eugene Smith,* for appellees.

*Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, Assistant Attorney General, B. Dean Grindle, Deputy Assistant Attorney General,* amicus curiae.

GUNTER, Justice, concurring specially. I concur in the court's judgment of reversal today solely because I consider that I am bound by the majority decisions of the Supreme Court of the United States in Paris Adult Theatre I v. Slaton, supra, and Miller v. California, supra, rendered June 21, 1973.

Were it not for those two recent decisions I would hold that the Georgia statute (Code Ann. § 26-2101) which permits the state to suppress "obscene materials" is vague and overly broad so as to

be constitutionally unenforceable.

While I do not consider the First Amendment to be absolute, it is my view that First Amendment proscriptions, made applicable to Georgia by the Fourteenth Amendment, do not permit the state to suppress expression unless such suppressed expression is clearly defined by the state so that a reasonable man can see the line of demarcation between protected expression and suppressed expression. The definition of "obscene materials" that may be suppressed by the state, contained in the present Georgia statute, does not, to my mind, come even close to establishing that line of demarcation. A reasonable man or, for that matter, seven supposedly reasonable judges, utilizing objective criteria which in the last resort end up being really subjective criteria, cannot distinguish constitutionally protected material from material that is unprotected by the First Amendment.

The net result of the Miller (obscenity concept) case is that this court acts as a seven-man board of censors in the State of Georgia, and the Supreme Court of the United States acts as a nine-man board of censors throughout the nation, with a majority of this court determining what is constitutionally protected or unprotected in Georgia and a majority of the Justices of the Supreme Court of the United States determining what is constitutionally protected or unprotected at the national level. As Mr. Justice Brennan so aptly put it in his dissenting opinion in Paris Adult Theatre I: "The problem is, rather, that one cannot say with certainty that material is obscene until at least five members of this court, applying inevitably obscure standards, have pronounced it so." See also the decision of this court in *Jenkins v. State,* 230 Ga. 726 (199 SE2d 183) (1973).

However, because of the majority decisions in Miller v.California and Paris Adult Theatre I v. Slaton, supra, I am required to hold that the present Georgia statute defining obscene material that may be suppressed by the state is not a constitutionally vague and over broad statute.

I therefore concur in the judgment of reversal.